# GRANNIS *v.* ORDEAN.

# GRANNIS *v.* WHITESIDE.

### ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

Nos. 325, 326. Argued April 27, 28, 1914.—Decided June 8, 1914.

Where the trial court did not infringe any Federal right of plaintiff in error, but the decision of the appellate court ran counter to the alleged Federal right which was raised on petition for reargument and specifically passed on and overruled in refusing the reargument, this court has jurisdiction under § 237, Judicial Code, to review the judgment.

In determining what is due process of law within the meaning of the Fourteenth Amendment, there is a distinction between actions *in personam* and actions *in rem;* in the former judgments without personal service within the State are devoid of validity either within or without the State but in the latter the judgment although based on service by publication may be valid so far as it affects property within the State. *Pennoyer* v. *Neff*, 95 U. S. 714.

Where a State has jurisdiction over the *res* the judgment of the court to which that jurisdiction is confided, in order to be binding with respect to the interest of a non-resident not served with process within the State, must be based upon constructive service by mailing, publication or otherwise in accordance with the law of the State.

This court must exercise an independent judgment as to whether the process sanctioned by the court of last resort of the State constituted due process of law; it is not bound by, nor can it merely accept, the decision of the state court on that question.

While the fundamental requisite of due process of law is the opportunity to be heard, that does not impose an unattainable standard of accuracy; and a defendant served with process either personally, or by publication and mailing, in which his name is misspelled cannot safely ignore it on account of the misnomer.

The general rule in cases of constructive service of process by publication tends to strictness, but even in names due process of law does not require ideal accuracy.

In constructive service of process by publication and mailing where

there has been a misnomer, neither the test of *idem sonans* nor that of substantial similarity in appearance in print is the true one; but whether the summons as published and mailed complies with the law of the State so as to give sufficient constructive notice to the party mis-named.

In this case, *held*, that a summons in an action of foreclosure served by publication and mailing and otherwise in strict compliance with the state statute, did not deprive a defendant of his property without due process of law because his name was misspelled Albert Guilfuss assignee in the various papers instead of correctly, Albert B. Geilfuss assignee.

118 Minnesota, 117, affirmed.

THE facts, which involve the validity under the due process provision of the Fourteenth Amendment of a judgment based on service by publication in which the name of the defendant was misspelled, are stated in the opinion.

*Mr. Henry J. Grannis* and *Mr. Frederic D. McKenney* for plaintiff in error.

*Mr. Alfred Jaques*, with whom *Mr. Theodore T. Hudson* and *Mr. John G. Williams* were on the brief, for defendants in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

These two cases were heard as one, upon the record in No. 325; it being stipulated that since the cases are identical in their facts, and in the questions raised, except that they pertain to different portions of the land respecting which the controversy arises, the decision in No. 326 shall abide the result in No. 325. We shall, therefore, discuss the record in the latter case, without further mention of No. 326.

On the eighth day of November, 1895, and for some time prior thereto, one John McKinley was the owner of an undivided fifth part of certain lands in the County of St. Louis, in the State of Minnesota. Prior to that

time one Albert B. Geilfuss, Assignee, recovered a judgment for the sum of $2,854.02 against McKinley in the District Court of that County, which was duly entered in the judgment book and appeared in the judgment roll in the name of Albert B. Geilfuss, Assignee, and on the fifth day of January, 1894, was docketed by the clerk of the court as in favor of Albert Geilfuss, Assignee, as judgment creditor and against John McKinley as judgment debtor, and being so docketed became a lien upon McKinley's interest in said lands, and on November 8, 1895, was a lien thereon. Under a sale afterwards made upon an execution issued on this judgment, plaintiff in error claims title to the undivided one-fifth of said lands formerly owned by McKinley, by virtue of certain proceedings and conveyances hereafter mentioned. Albert B. Geilfuss, Assignee, recovered another judgment against McKinley for the sum of $2,125.60, which was duly entered and docketed on January 10, 1894, and became a lien upon the interest of McKinley in the same lands, but plaintiff in error claims no rights thereunder.

On November 8, 1895, one George A. Elder, the owner of an undivided fifth interest in said lands, commenced a partition suit in the District Court of St. Louis County against Mesaba Land Company, John McKinley, and the other owners of the fee, and also against certain other parties having judgment or other liens. The suit was brought under the provisions of Chapter 74, Gen. Stat. Minnesota, and its sole purpose was to partition the lands, or, in case a partition could not be had, then to have them sold and the proceeds of the sale distributed among the parties entitled.

At the time of the partition action, Albert B. Geilfuss, Assignee, resided at Milwaukee, Wisconsin. His correct name, "Albert B. Geilfuss, Assignee," or "Albert Geilfuss, Assignee," did not appear among the names of the defendants in the action, or in the summons or other files

or records therein. "Albert Guilfuss, Assignee" was named as a defendant, and it was alleged in the complaint, and found and determined in the findings and judgment, that he was the owner of the judgment for $2,854.02 against McKinley. "Albert B. Guilfuss" was also named as a defendant, and it was alleged in the complaint and found and determined in the findings and judgment that he was the owner of the judgment for $2,125.60 against McKinley. There was no personal service of the summons in the partition action upon Geilfuss, however named, either as individual or as assignee, and no appearance in his behalf. There was a return by the sheriff of St. Louis County upon the summons to the effect that the defendants "Albert Guilfuss, Assignee," and "Albert B. Guilfuss" could not be found in the county, and an affidavit of one of the attorneys of plaintiff was filed, stating that he believed that the defendants "Albert Guilfuss, Assignee," and "Albert B. Guilfuss" were not residents of the State of Minnesota, and could not be found therein, and that after the commencement of the action affiant had deposited copies of the summons in the post-office with postage prepaid, directed to each of these defendants at their respective places of residence, to wit, one to Albert Guilfuss, Assignee, Milwaukee, Wisconsin, and one to Albert B. Guilfuss, Milwaukee, Wisconsin, and stating that the subject of said partition action was certain real property situated in the County of St. Louis and State of Minnesota, and that each of said defendants had and claimed a lien and interest in said real estate, and that the relief demanded in said action consisted in excluding the defendants and each of them from any interest or lien therein. There was also service of the summons by publication upon the defendants named therein as "Albert Guilfuss, Assignee," and "Albert B. Guilfuss," the summons being published in a legal newspaper in Duluth, which is in St. Louis County, Minnesota. It is admitted

that (saving the effect of the misnomer), the statutory provisions respecting the service of summons upon non-residents by mailing and publication were complied with. These are contained in Minnesota Statutes 1894, §§ 5204 and 5205 (respecting civil actions), and in §§ 5771 and 5773 (respecting actions for partition of real property).[1]

---

[1] CHAPTER 66.

CIVIL ACTIONS.

\*    \*    \*    \*    \*    \*    \*    \*

Section 5204. Service by publication, when allowed.

When the defendant cannot be found within the State, of which the return of the sheriff of the county in which the action is brought, that the defendant cannot be found in the county, is *prima facie* evidence, and upon the filing of an affidavit of the plaintiff, his agent or attorney, with the clerk of the court, stating that he believes that the defendant is not a resident of the State, or cannot be found therein, and that he has deposited a copy of the summons in the postoffice, directed to the defendant at his place of residence, unless it is stated in the affidavit that such residence is not known to the affiant, and stating the existence of one of the cases hereinafter specified, the service may be made by publication of the summons by the plaintiff or his attorney in either of the following cases:

\*    \*    \*    \*    \*    \*    \*    \*

*Fifth.* When the subject of the action is real or personal property in this state, and the defendant has or claims a lien or interest, actual or contingent, therein, or the relief demanded consists wholly or partly in excluding the defendant from any interest or lien therein.  .  .  .

Section 5205. Publication, how made.

The publication shall be made in a newspaper printed and published in the county where the action is brought, (and if there is no such newspaper in the county, then in a newspaper printed and published in an adjoining county, and if there is no such newspaper in an adjoining county, then in a newspaper printed and published at the capital of the state,) once in each week for six consecutive weeks; and the service of the summons shall be deemed complete at the expiration of the time prescribed for publication as aforesaid.

\*    \*    \*    \*    \*    \*    \*    \*

All of the defendants in the action were properly served with summons, except as mentioned, and in due course a judgment was entered on May 5, 1899, adjudging and decreeing the ownership of the lands, and that they could not be divided and partitioned, and ordering that they be sold by a referee to the highest bidder and the proceeds distributed among the defendants according to their respective rights under the law. The sale was made accordingly and confirmed by the court, and thereafter the present defendants in error, by mesne conveyances, acquired such interest in the lands as had been acquired by the purchaser under the referee's sale.

Subsequently the Geilfuss judgment against McKinley, docketed January 5, 1894, for the sum of $2,854.02, was assigned to one Timlin and by him to one Buell, and whatever interest in the land, if any, remained in McKinley after the partition sale was sold under execution and purchased by Buell, and subsequently acquired through mesne conveyances by the present plaintiff in error.

This action (No. 325) was brought by defendants in error to determine the adverse claims in the lands. The trial resulted in a judgment to the effect that the plaintiffs

---

CHAPTER 74.

ACTIONS FOR THE PARTITION OF REAL PROPERTY.

\*   .   \*   .\*   \*   \*   \*   .\*   \*

Section 5771. Summons, to whom addressed.

The summons shall be addressed by name to all the owners and lienholders who are known, and generally to all persons unknown, having or claiming an interest in the property.

\*   \*   \*   \*   \*   \*   \*   \*

Section 5773. Rules as to civil actions applicable.

Such action shall be governed by the rules and provisions applicable to civil actions, including the right of appeal, except that, when service of the summons is made by publication, it shall be accompanied by a brief description of the property sought to be divided, and except as herein otherwise expressly provided.

were the owners of an undivided four-fifths interest, and that the present plaintiff in error was the owner of the undivided fifth interest which had been the property of McKinley. Upon appeal, the Supreme Court reversed the judgment so far as it adjudged plaintiff in error to be the owner of McKinley's interest. 118 Minnesota, 117. By the present writ of error we are called upon to determine whether the Supreme Court of Minnesota, by its judgment giving effect to the decree in the partition suit notwithstanding the misnomer of Albert B. Geilfuss, Assignee, in the proceedings and summons, has deprived plaintiff in error of his property without due process of law, contrary to the Fourteenth Amendment.

The trial court held that no jurisdiction was acquired in the partition suit over the judgment lien of Albert B. Geilfuss, Assignee, and the Supreme Court declared that if this were correct the lien of his judgment upon the McKinley interest was not affected by the decree in that action, and that the subsequent sale of that interest under execution on the judgment gave a good title to the purchaser, under whom defendant (now plaintiff in error) claims; while on the other hand, if the court acquired jurisdiction over that judgment lien, the McKinley interest in the lands passed to the purchaser at the partition sale, and afterwards became the property of plaintiffs (now defendants in error). This was upon the assumption that the court had jurisdiction to decree a sale in the partition action, a question of state law arising out of facts not here pertinent, and to which an affirmative answer was given in the same opinion.

The precise question now presented, therefore, is whether, under the circumstances, a service by the publication and mailing of a summons in the partition suit, naming as party and addressee "Albert Guilfuss, Assignee," and "Albert B. Guilfuss," constituted due process of law conferring jurisdiction to render a judgment binding

upon Albert B. Geilfuss, Assignee, with respect to his lien upon or interest in the land, he not having appeared.

There is a motion to dismiss, upon the ground that the Federal question was not properly raised in the state court. This motion must be denied. It is true that until the decision of the Supreme Court of the State, the Federal right was not clearly asserted. But it was not infringed in the trial court, which held in favor of the contention of defendant (now plaintiff in error) that the decree in the partition suit was not valid because of the insufficiency of the notice to Geilfuss. It was the decision of the Supreme Court upholding the notice that first ran counter to the alleged Federal right. In a petition for reargument, filed by the now plaintiff in error, it was suggested that the necessary effect of the decision was to deprive him of his property without due process of law, contrary to the Fourteenth Amendment. The Supreme Court entertained the petition, considered and overruled the contention that petitioner's rights under the Amendment were infringed, declared that its decision was to be interpreted as holding against the contention, and therefore refused a reargument. This is sufficient to confer jurisdiction upon this court. *Mallett* v. *North Carolina*, 181 U. S. 589, 592; *Leigh* v. *Green*, 193 U. S. 79, 85; *McKay* v. *Kalyton*, 204 U. S. 458, 463; *Sullivan* v. *Texas*, 207 U. S. 416, 422; *Kentucky Union Co.* v. *Commonwealth of Kentucky*, 219 U. S. 140, 158.

We therefore proceed to the merits.

In determining what is due process of law within the meaning of the Fourteenth Amendment, a distinction is to be observed between actions *in personam* and actions *in rem*, or *quasi in rem*. In *Pennoyer* v. *Neff*, 95 U. S. 714, 733, it was held that by force of the Amendment a judgment rendered by a state court in an action *in personam* against a non-resident served by publication of summons, but upon whom no personal service of process within the

State was made, and who did not appear to the action, was devoid of any validity either within or without the territory of the State in which the judgment was rendered; it being, however, conceded that a different rule obtains where, in connection with initial process against a person, property in the State is brought under the control of the court and subjected to its disposition, or where the judgment is sought as a means to reach such property or affect some interest in it; in other words, where the action is in the nature of a proceding *in rem.* As was said by the court (speaking by Mr. Justice Field, p. 734): "It is true that, in a strict sense, a proceeding *in rem* is one taken directly against property, and has for its object the disposition of the property, without reference to the title of individual claimants; but, in a larger and more general sense, the terms are applied to actions between parties, where the direct object is to reach and dispose of property owned by them, or of some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose a mortgage, or enforce a lien. So far as they affect property in the State, they are substantially proceedings *in rem* in the broader sense which we have mentioned."

But it is also settled that where a State has jurisdiction over a *res*—as of course it has over the partition of lands lying within its borders—the judgment of the court to which that jurisdiction is confided, in order to be binding with respect to the interest of a non-resident who is not served with process within the State, must be based upon constructive notice given by publication, mailing, or otherwise, substantially in the manner prescribed by the law of the State. *Cheely* v. *Clayton,* 110 U. S. 701, 705; *Guaranty Trust Co.* v. *Green Cove Railroad,* 139 U. S. 137, 148; *Windsor* v. *McVeigh,* 93 U. S. 274, 283; *Hassall* v. *Wilcox,* 130 U. S. 493, 504; *Thompson* v. *Thompson,* 226 U. S. 551, 562.

In the case before us, there is no disputed question as to what steps were taken in order to give notice to Geilfuss of the partition suit. The Supreme Court of the State, in accepting what was done as being a sufficient compliance with the provisions of the statute, in effect construed the statute as permitting such notice to be given as was in fact given.

But, the question whether the process thus sanctioned by the court of last resort of the State constitutes due process of law within the meaning of the Fourteenth Amendment being properly presented to this court for decision, we must exercise an independent judgment upon it. *Scott v. McNeal,* 154 U. S. 34, 45; *Ballard v. Hunter,* 204 U. S. 241, 260; *Jacob v. Roberts,* 223 U. S. 261.

The fundamental requisite of due process of law is the opportunity to be heard. *Louisville & Nashville R. R. Co. v. Schmidt,* 177 U. S. 230, 236; *Simon v. Craft,* 182 U. S. 427, 436. And it is to this end, of course, that summons or equivalent notice is employed. But the inherent authority of the States over the titles to lands within their respective borders carries with it, of necessity, the jurisdiction to determine rights and interests claimed therein by persons resident beyond the territorial limits of the State, and upon whom the ordinary judicial process cannot be served. The logical result is that a State, through its courts, may proceed to judgment respecting the ownership of lands within its limits, upon constructive notice to the parties concerned who reside beyond the reach of process. That this constitutes "due process" within the meaning of the Fourteenth Amendment was recognized in *Pennoyer v. Neff, supra,* and is no longer open to question. *Huling v. Kaw Valley Railway,* 130 U. S. 559, 563; *Arndt v. Griggs,* 134 U. S. 316, 320 *et seq.; Lynch v. Murphy,* 161 U. S. 247, 251; *Roller v. Holly,* 176 U. S. 398, 403. It is not disputed that the statutory scheme of publication and mailing, as established in

Minnesota, for giving notice to non-resident defendants in actions *quasi in rem*, is in its general application sufficient to comply with the Fourteenth Amendment. But the statute provides that "the summons shall be addressed by name to all the owners and lien holders who are known"; and the contention is that the mistake of name in the present instance was fatal.

The "due process of law" clause, however, does not impose an unattainable standard of accuracy. If a defendant within the jurisdiction is served personally with process in which his name is misspelled, he cannot safely ignore it on account of the misnomer. The rule, established by an abundant weight of authority, is, that if a person is sued by a wrong name, and he fails to appear and plead the misnomer in abatement, the judgment binds him. *Lafayette Ins. Co.* v. *French*, 18 How. 404, 409; *Crawford* v. *Satchwell*, 2 Strange, 1218; *Oakley* v. *Giles*, 3 East, 167; *Smith* v. *Patten*, 6 Taunt. 115; *S. C.*, 1 Marsh. 474; *Smith* v. *Bowker*, 1 Massachusetts, 76, 79; *Root* v. *Fellowes*, 6 Cush. 29; *First Nat'l Bank* v. *Jaggers*, 31 Maryland, 38, 47; *S. C.*, 100 Am. Dec. 53, 54; *McGaughey* v. *Woods*, 106 Indiana, 380; *Vogel* v. *Brown Township*, 112 Indiana, 299; *S. C.*, 2 Am. St. Rep. 187; *Lindsey* v. *Delano*, 78 Iowa, 350, 354; *Hoffield* v. *Board of Education*, 33 Kansas, 644, 648.

Of course, in a published notice or summons, intended to reach absent or non-resident defendants, where the name is a principal means of identifying the person concerned, somewhat different considerations obtain. The general rule, in cases of constructive service of process by publication, tends to strictness. *Galpin* v. *Page*, 18 Wall. 350, 369, 373; *Priest* v. *Las Vegas*, 232 U. S. 604. But, even in names, "due process of law" does not require ideal accuracy. In the spelling and pronunciation of proper names there are no generally accepted standards; and the well-established doctrine of *idem sonans*—generally ap-

plied, as it is, to constructive notice of suits—is a recognition of this.

The trial court was of the opinion that the question turned upon whether "Guilfuss" and "Geilfuss" were *idem sonans*, and held that since "Geilfuss" is evidently a German name the first syllable must be pronounced with the long sound of "i," while the first syllable of "Guilfuss" would necessarily be pronounced with the short sound of "i." The court therefore concluded that the names were not *idem sonans*, and that the difference was fatal. The Supreme Court agreed that "Geilfuss" and "Guilfuss" were not *idem sonans*, but held that this was not the proper test; that where a summons is served by publication, the true test is not whether the names sound the same to the ear when pronounced, but whether they look substantially the same in print (following *Lane* v. *Innes*, 43 Minnesota, 137, 143; *D'Autremont* v. *Anderson Iron Co.*, 104 Minnesota, 165); and assuming that the name of the judgment creditor of McKinley was Albert B. Geilfuss, Assignee, the court said: "The question then is, placing the names 'Albert Guilfuss, Assignee,' and 'Albert B. Geilfuss, Assignee,' in juxtaposition, was there so material a change as to be misleading?" This was answered in the negative.

Were we to theorize, we might say that while each of these tests is helpful, neither is altogether acceptable if perfect accuracy were the aim; not the test of *idem sonans*, because it does not appear that all persons would necessarily pronounce Geilfuss with the long "i," or Guilfuss with the short "i"; and not the test of the appearance of the names as printed and placed in juxtaposition, because in fact, as the name appeared in the summons published and mailed, it was "Guilfuss" alone, without any name in juxtaposition to serve as a standard for comparison. And we think both tests are inadequate if applied without regard to what was contained in the summons besides the mere name and addition—"Albert Guilfuss, As-

signee." The record, as it happens, contains no copy of
the summons; but from findings and admissions that are
in the record, we know that it was in due form, and there-
fore that it contained such notice of the commencement
of the action and of its purpose, and such warning to ap-
pear and answer, as would constitute due process of law if
served upon a defendant within the jurisdiction (Minne-
sota Stats., 1894, §§ 5194, 5195); and that it contained,
inter alia, a brief description of the property sought to be
divided (Minnesota Stats., 1894, § 5773, marginal note,
supra). The underlying question is a practical one—
whether, notwithstanding the misnomer, the summons as
published and mailed, being otherwise unexceptionable,
constitutes a substantial compliance with the Minnesota
statute and sufficient constructive notice to the party con-
cerned. In determining this, we need not confine our-
selves to the test of idem sonans, nor to the appearance of
the name in print, but may employ both of these, with
such additional tests as may be available in view of what
is disclosed by the record. One such additional test, we
think, is whether, when two letters reached the postoffice
at Milwaukee, one addressed "Albert Guilfuss, Assignee,"
the other addressed "Albert B. Guilfuss," they or either of
them would, in reasonable probability, be delivered to
Albert B. Geilfuss, then a resident of that city. Another
is, whether, assuming that the summons as so mailed, or
as published in Duluth, and containing the misspelled
names or either of them, had come to the eye of the ver-
itable Albert B. Geilfuss, or of any person knowing him
by that name and sufficiently interested in him to ac-
quaint him with its contents if apprised that it was in-
tended for him, the summons, as a whole, would probably
have conveyed notice that Albert B. Geilfuss was the
person intended to be summoned. Both of these questions
are, we think, to be answered in the affirmative. In view
of the well-known skill of postal officials and employés

in making proper delivery of letters defectively addressed, we think the presumption is clear and strong that the letters would reach—indeed, that they did reach—the true Albert B. Geilfuss in Milwaukee. And it seems to us that any person knowing him, and knowing the correct spelling of his name, and having reason to acquaint him with the contents of a notice of this character if supposed to be intended for him, would probably realize for whom such notice was intended, notwithstanding the name was spelled "Guilfuss." The general resemblance between the names is striking, however they are to be pronounced. And the designation, "Assignee," was an additional means of identification. That Geilfuss himself, upon receiving the notice, would be sufficiently warned that it affected his interest in the Minnesota lands under his judgments against McKinley, is free from doubt. He would of course observe the misnomer; but, having received the notice which it was the purpose of the law to convey to him, he could not safely ignore it on the ground of the mistake in the name, any more than, if personally served with summons within the State of Minnesota, he could have ignored it on account of a similar misnomer.

We conclude that there was due process of law in the partition suit, and that therefore the present judgment should be affirmed.

*Judgments in Nos. 325 and 326 affirmed.*