STATE OF NEW JERSEY, PLAINTIFF, v.
RICHARD LEBBING, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided April 12, 1978.

*Mr. Thomas A. Pavics,* Assistant Deputy Public Defender, for defendant Lebbing (*Mr. Stanley C. Van Ness,* Public Defender of New Jersey, attorney).

*Mr. Philip J. Maiorca,* Assistant Prosecutor, for the State of New Jersey (*Mr. David Linett,* Somerset 'County Prosecutor, attorney).

MEREDITH, J. S. C. This matter comes on for hearing by the court by way of motion brought by the State to terminate defendant's pretrial diversionary status and to return him to the normal course of prosecution. *R.* 3:28(c)(3). On the hearing of this motion defense counsel moved to allow the introduction of testimony and other relevant evidence bearing on defendant's fitness to continue in the Somerset County Pretrial Intervention Program (hereinafter PTI). Resolution of this latter motion raises the issue of whether a pretrial divertee is entitled, as a matter of constitutional due process, to an evidentiary hearing on a motion to terminate his diversionary status where he may present evidence in his own behalf and may confront evidence proffered against him.

Defendant is charged in three separate indictments containing single counts with renting a motor vehicle with intent to defraud, contrary to *N. J. S. A.* 2A:111–34. Pursuant to timely application defendant was, on June 24, 1977, admitted into Somerset PTI for an initial three-month period of supervision. A condition of the supervisory program was that defendant submit to an evaluation to determine whether enrollment in an alcoholic rehabilitation program was indicated. On September 15, 1977 defendant was admitted to a residential alcoholic treatment center. Subsequently, on September 24, 1977, a second three-month period of supervision was imposed pursuant to *R.* 3:28(c) (2).

On November 7, 1977 defendant belatedly informed Somerset PTI that he had been arrested for utterance of a forged check on July 27, 1977 in Flemington, Hunterdon County, New Jersey. A determination to recommend termination of defendant's diversionary status was made by the Somerset PTI Program Director because of defendant's arrest and concealment of that fact and for noncooperation, generally, in the acceptance of and amenability to supervision. A termination report was submitted to the court at the termination hearing which concluded that defendant is "not amenable to short term rehabilitation and the concepts of PTI * * *," and recommended termination. Defendant seeks to challenge the validity of this conclusion and the correctness of its factual foundation by way of the instant motion for an evidentiary hearing. Defendant asserts that such is constitutionally mandated by the requirements of due process embodied in the Fourteenth Amendment of the Federal Constitution.

The first question encountered is whether due process principles apply at all to the present proceedings. Determination of this question in no wise turns on whether continuation of diversionary status is deemed either a "right" or a "privilege." This dichotomy, in the due process context, has been emphatically rejected by the United States

Supreme Court, *Graham v. Richardson*, 403 *U. S.* 365, 91 *S. Ct.* 1848, 29 *L. Ed.* 2d 534, (1971); *Goldberg v. Kelly*, 397 *U. S.* 254, 90 *S. Ct.* 1011, 25 *L. Ed.* 2d 287, (1970); *Shapiro v. Thompson*, 394 *U. S.* 618, 89 *S. Ct.* 1322, 22 *L. Ed.* 2d 600, (1969), and by our own Supreme Court, *State v. Leonardis*, 71 *N. J.* 85 (1976) (*Leonardis* I); *Avant v. Clifford*, 67 *N. J.* 496 (1975). See also, Van Alstyne, "The Demise of the Right-Privilege Distinction in Constitutional Law," 81 *Harv. L. Rev.* 1439 (1968). As a general matter, determination of whether procedural due process applies depends on the extent to which an individual will be made to suffer a "grievous loss." *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 *U. S.* 123, 168, 71 *S. Ct.* 624, 626 95 *L. Ed.* 817, (1951) (Frankfurter, J. concurring); *Morrissey v. Brewer*, 408 *U. S.* 471, 92 *S. Ct.* 2593, 33 *L. Ed.* 2d 484, (1972). This principle has been applied and extended to varying situations in New Jersey. See *Avant v. Clifford, supra; In Interest of D. G. W.*, 70 *N. J.* 488 (1976). The inquiry devolves into the question of whether the nature of the interest is one within the contemplation of the "liberty or property" language of the Fourteenth Amendment. *Morrissey v. Brewer, supra; Wolff v. McDonnell*, 418 *U. S.* 539, 94 *S. Ct.* 2963, 41 *L. Ed.* 2d 935 (1974).

In proceedings closely analogous to the instant proceeding, the United States Supreme Court has decided that due process principles are applicable. In *Morrissey v. Brewer, supra,* the court held that due process procedural protections apply to parole revocation proceedings. The Court reasoned that the conditional liberty at stake there contained many of the "core values" attendant upon unqualified liberty, such that its termination inflicted "grievous loss" on the parolee. In *Gagnon v. Scarpelli*, 411 *U. S.* 778, 93 *S. Ct.* 1756, 36 *L. Ed.* 2d 656 (1973), the court extended this reasoning to include probation terminations, finding there to be no difference between parole and probation terminations insofar as

due process was concerned, since the same interests were at stake.

■ This reasoning appears fully applicable to PTI terminations as well. Certainly, in many instances, loss of PTI status will also entail the loss of the conditional liberty attendant upon participation in the program. This interest alone was deemed sufficient to impose due process protections in *Morrissey* and in *Gagnon, supra.* With respect to this aspect, it might be noted that PTI and probation are deemed so closely similar as to have led some commentators to refer to PTI as a form of pretrial probation. See *Pretrial Intervention Legal Issues* (1977), at 41. However, there appears to be more at stake here than simply this interest. Loss of diversionary status also entails the loss of freedom from prosecution, as well as imposing the possibility of adjudication of guilt and the stigma of conviction. Another affirmative disability not to be discounted is the possibility of an unfavorable presentence report because of the termination. See "Pretrial Intervention Programs — An Innovative Reform of the Criminal Justice System," 28 *Rutg. L. Rev.* 1203 (1975) ; *Pretrial Intervention Legal Issues* at 43. The sum total of these disabilities compels the court to the conclusion, buttressed by the holdings in *Morrissey* and *Gagnon,* that due process principles apply to PTI termination hearings.

■ ■ "Once it is determined that due process applies, the question remains what process is due." *Morrissey, supra,* 408 *U. S.* at 481, 92 *S. Ct.* at 2600. This requires consideration of the precise nature of the government function involved as well as the private interest that has been affected. *Cafeteria & Restaurant Workers Union v. McElroy,* 367 *U. S.* 886, 81 *S. Ct.* 1743, 6 *L. Ed.* 2d 1230 (1961). In *Morrissey, supra,* the court outlined the respective interests at stake in the parole revocation context. It considered that the parolee was not the only one with a stake in his conditional liberty. The court deemed that society has a stake as well in restoring the parolee to a normal and useful life within the law. Society thus has an interest in not having the parole

revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole. As well, society has an interest in provision of basic fairness to the individual involved, so as to enhance the chances of rehabilitation. *Id.*, 408 *U. S.* at 483–484, 92 *S. Ct.* at 2601–2602. Given the close resemblance of the functional and rehabilitative purposes of parole (as well as probation) and PTI, the court deems that these considerations are equally applicable with respect to termination of diversionary status. Just as these considerations warranted the court in *Morrissey* in requiring that the parolee, as a matter of due process of law, be given the opportunity to be heard, so also these considerations warrant this court in according the same right to defendant in the instant proceeding.

 This right, described as the "fundamental requisite of due process of law," *Grannis v. Ordean,* 234 *U. S.* 385, 394, 34 *S. Ct.* 779, 783, 58 *L. Ed.* 1363 (1914), quoted in *Goldberg v. Kelly, supra,* 397 *U. S.* at 267, 90 *S. Ct.* at 1020, requires that the hearing be held at a meaningful time and in a meaningful manner. *Armstrong v. Manzo,* 380 *U. S.* 545, 85 *S. Ct.* 1187, 14 *L. Ed.* 2d 62 (1965); *Goldberg v. Kelly, supra.* Implicit in this mandate, and particularly as applied to the instant proceeding, are the minimal requirements of due process that defendant be given (a) written notice of the claimed violations of the conditions of PTI; (b) disclosure to defendant of the evidence relied on; (c) the opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and examine adverse witnesses; (e) a statement of reasons for termination by the presiding judge. See *Morrissey v. Brewer,* and *Gagnon v. Scarpelli;* and see *Goldberg v. Kelly,* all *supra.* The hearing need not be a formal one, in the sense that strict rules of evidence need not apply, since the PTI termination, not being a part of the criminal prosecution, does not implicate the "full panoply" of due process rights, *Morrissey, supra; Mempa v. Rhay,* 389 *U. S.* 128, 88 *S. Ct.* 254, 19 *L. Ed.* 2d 336 (1967); how-

ever, the hearing must be designed to guarantee a defendant the minimal due process requisites set forth above.

This holding appears consistent with the Supreme Court's decisions in *Leonardis I, supra,* and *Leonardis II* (*State v. Leonardis,* 73 *N. J.* 360 (1977)). The court was plainly mindful of the procedural due process implications attendant upon each phase of a defendant's contact with PTI, see *Leonardis* I, *supra,* 71 *N. J.* at 116–119; *Leonardis* II, *supra,* 73 *N. J.* at 377–380, and, in particular, the due process requirements set forth in *Morrissey* and *Gagnon;* see *Leonardis* I, *supra,* 71 *N. J.* at 118–119. The court declined · to set forth procedures necessary for PTI termination hearings, *Leonardis* II, *supra,* 73 *N. J.* at 383, n. 12; however, the court did approve, in substantial portion, the *Proposal for Statewide Implementation of a Uniform Program of Pretrial Intervention under New Jersey Court Rule* 3:28. See *Leonardis* I, *supra,* 71 *N. J.* at 101, n. 9. The Proposal, at 87, specifically contemplates that termination hearings embody the due process requisites set forth in *Morrissey* and *Gagnon.*

The final question for determination by the court involves the appropriate standard of decision to be observed by the presiding judge. Unlike appeals of PTI application denials, a termination hearing does not involve a review of a decision already made either by the program director or the prosecutor; thus the "patent abuse of discretion" standard erected in *Leonardis* II, *supra,* for hearings of the former type is inappropriate in the termination setting.

A termination hearing requires a determination of the factual basis underlying the alleged violation of PTI conditions and an exercise of discretion in determining whether, under the particular circumstances, participation in the program ought be terminated. Such determinations are identical to those which must be made in probation revocation proceedings. See *State v. Moretti,* 50 *N. J. Super.* 223 (App. Div. 1958); *State v. Zachowski,* 53 *N. J. Super.* 431 (App. Div. 1959). The close analogy between these pro-

ceedings has already been adverted to, *ante.* Thus, breach of the conditions of PTI and the unfitness of the divertee to continue in the program need not be established beyond a reasonable doubt; no particular source, manner or degree of proof shall be required. The court is only required to have "reasons to believe" that the violation charges are true. See *State v. Moretti, supra,* 50 *N. J. Super.* at 237; *State v. Wasserman,* 75 *N. J. Super.* 480, 485, (App. Div. 1962). Beyond that, the presiding judge must exercise a sound discretion in deciding whether or not to terminate. This implies a conscientious judgment which takes account of the particular circumstances in deciding the fitness *vel non* of the continuation of the defendant's diversionary status.

Such a standard appears to comport well with the concepts and purpose of PTI. Its flexibility permits the presiding judge to take full account of the individual and personal characteristics of the divertee as well as the surrounding circumstances of each case. Such considerations were deemed of primary significance by the court in *Leonardis* I, *supra,* see 71 *N. J.* at 100 and in *Leonardis* II, *supra,* see 73 *N. J.* at 372 and 383–384, in furthering the rehabilitative function of PTI. Accordingly, such considerations are persuasive with respect to the appropriate standard of decision as well.