■ In the Matter of LORETTA I. JACQUELINE DeMARTINO et al., Respondents; SONALI LESLIE-HOPKINS, Respondent. WENDY JOHNSTON, Nonparty Appellant. [824 NYS2d 372]—

In a proceeding pursuant to Mental Hygiene Law article 81 to appoint a guardian for the person and property of Loretta I., an alleged incapacitated person, the nonparty, Wendy Johnston, appeals, as limited by her brief, from so much of a resettled order and judgment (one paper) of the Supreme Court, Kings County (Barros, J.), entered August 11, 2004, as, upon a decision of the same court dated February 10, 2004, vacated conveyances transferring title to certain real property owned by Loretta I. and her sister Johanna C., to Wendy Johnston.

Ordered that the resettled order and judgment is modified, on the law, by deleting the provision thereof vacating the conveyances of the subject real property and substituting therefor a provision enjoining any further transfer of the subject real property pending the conclusion of the turnover proceeding authorized by the order and judgment; as so modified, the order and judgment is affirmed insofar as appealed from, without costs or disbursements.

Jacqueline DeMartino and Thomas DiSarli commenced a proceeding pursuant to article 81 of the Mental Hygiene Law for the appointment of a guardian of the person and property of then 91-year-old Loretta I., an alleged incapacitated person. The verified petition described DeMartino as "a friend of Loretta [I.] for over twenty (20) years." DiSarli was Loretta's nephew by

marriage. The petition alleged that Loretta had been diagnosed as suffering from advanced dementia and required assistance with all activities of daily living.

Subsequently, the Commissioner of Social Services of the City of New York (hereinafter the Commissioner) commenced proceedings pursuant to Mental Hygiene Law article 81 for the appointment of guardians for the person and property of then 93-year-old Johanna C., Loretta's sister, and then 57-year-old Annette I., Loretta's daughter, who were also alleged incapacitated persons (*see Matter of Annette I.*, 34 AD3d 479 [2006] [decided herewith]). Johanna suffered from a cognitive disability, and Annette had been diagnosed with mental retardation and Down's Syndrome. Both allegedly had "an inability to perform [their] activities of daily living, including but not limited to, mobility, cooking, shopping, arranging for medical care, money management and banking."

The Commissioner sought a temporary restraining order to enjoin Wendy Johnston, Johanna, Loretta, and any other party claiming an interest in the subject property from selling or transferring "any and all interest in the property located at 32 72nd Street in Brooklyn, NY," and further, to enjoin Jacqueline DeMartino, Wendy Johnston, and Johanna from transferring funds from bank accounts belonging to Johanna, pending a hearing on the petitions.

The petitions asserted that each alleged incapacitated person had been the victim of financial exploitation and/or harassment. They specifically alleged that the neighbor of the alleged incapacitated persons, Wendy Johnston, improperly induced Loretta to designate her as her attorney-in-fact, allegedly caused Loretta and Johanna to convey to her the deed to the home they occupied, and to divest themselves of other assets, leaving Annette with no legacy upon the death of her mother and aunt.

None of the petitions in question named Johnston as a party nor did any of the petitions seek any permanent relief or potential award adverse to the interests of Johnston other than the request for temporary injunctive relief. As required by the orders to show cause at issue, Johnston was served with notice of the proceedings.

Hearings were held in May, June, July, September, October, November, and December 2003. The court evaluators' reports were admitted into evidence on December 16, 2003. Wendy Johnston's attorney, Anthony Bramante, was present at the hearings, and the Supreme Court permitted him to raise objections and cross-examine witnesses. However, his repeated attempts to dismiss the proceedings on the grounds that his client

was not a named party and had not received proper notice of the object of the action were denied by the Supreme Court.

The Supreme Court, inter alia, appointed guardians for the person and property of Johanna and Loretta. The Supreme Court directed, in pertinent part, that: "the conveyances of July 12, 2001, January 13, 2002, and February 1, 2001, transferring title to the property known as 32 72nd Street, Brooklyn, New York to WENDY JOHNSTON are hereby vacated." The Supreme Court further authorized the guardian of the property "to institute whatever action or proceeding is necessary to restore" Johanna's and Loretta's joint tenancy interest in the property. Additionally, it vacated a durable power of attorney, short and long form, and a health care proxy, each authorizing Wendy Johnston and, in Johanna's case, Jacqueline DeMartino, to act on Johanna's and Loretta's behalf. The Supreme Court, inter alia, also appointed a guardian for the person and property of Annette I.

Wendy Johnston, the nonparty appellant, contends that the Supreme Court denied her right to procedural due process by failing to properly obtain personal jurisdiction over her and by vacating, without first conducting a turnover proceeding pursuant to Mental Hygiene Law § 81.43, the deeds transferring title to the subject real property located at 32 72nd Street, Brooklyn, from Johanna and her sister, Loretta, aged 95 and 92, respectively, at the time, to Johnston, their neighbor, who apparently provided no consideration for these conveyances. These transfers and other transactions left Loretta's profoundly retarded daughter, Annette, without provision in the event of the death of her mother and aunt.

The failure of the petitioners to properly name the nonparty appellant and to properly notice the object of the proceedings as it pertains to the potential divestment of real and personal property acquired by the nonparty appellant from the alleged incapacitated persons was fatal to that relief (*see Matter of Rose BB.*, 243 AD2d 999 [1997]; *cf. Matter of Gershenoff*, 17 AD3d 243 [2005]; *Matter of Dot E.W.*, 172 Misc 2d 684 [1997]). However, relief ancillary to the appointment of guardians for the alleged incapacitated persons including, inter alia, temporary injunctive relief and vacatur of powers of attorney were properly noticed and did not impinge upon the nonparty appellant's potential property rights, and the nonparty appellant did not have to be named as a party to effectuate such relief (*see* CPLR 1001 [b]; 1004; *cf. Riverside Capital Advisors, Inc. v First Secured Capital Corp.*, 28 AD3d 457 [2006]; *Mucchi v Haddad Corp.*, 101 AD2d 724 [1984]).

We note that the transactions in question were not made by persons who were adjudicated incompetent and for whom a guardian had been appointed but, rather, by persons who were unable to understand the nature and consequences of their actions, rendering the transactions voidable (*see Ortelere v Teachers' Retirement Bd. of City of N.Y.*, 25 NY2d 196 [1969]; *Finch v Goldstein*, 245 NY 300 [1927]). Granting the guardians authority to commence a turnover proceeding against the nonparty appellant rather than deeming the transactions void, and enjoining any further transfer of the subject real property pending the turnover proceeding was and is a more appropriate course of action. Therefore, we do not disturb that portion of the resettled order and judgment authorizing the guardian to commence a turnover proceeding. Schmidt, J.P., Skelos and Lifson, JJ., concur.

Rivera, J. (dissenting and voting to affirm the resettled order and judgment insofar as appealed from): In this proceeding and in related proceedings pursuant to Mental Hygiene Law article 81, the petitioners sought the appointment of guardians for the person and property of Loretta I., her daughter Annette I., and Loretta's sister Johanna C.

At the time the proceedings were commenced, Johanna was 95 years of age, Loretta was 92 years of age, and Loretta's daughter, Annette, was 57 years of age. The three women resided together in a two-family house in Brooklyn owned by Loretta and Johanna.

The petitions alleged, inter alia, that the three women were incapacitated, as defined in Mental Hygiene Law § 81.02, as Loretta and Johanna were suffering from advanced dementia, among other ailments, and Annette was a mentally retarded adult with Down's Syndrome whose primary caregiver, her mother, was no longer capable of caring for her.

The petitions further alleged that the women were being exploited by a neighbor, the nonparty appellant, Wendy Johnston. Johnston allegedly had entered into various transactions with Johanna and Loretta, with the ultimate result that title to their home was transferred to Johnston, as well as other assets, including bank accounts and shares of stock, with no provision made for Annette in the event of the death of her mother and aunt. In addition to seeking the appointment of guardians for the alleged incapacitated persons, the petitions sought to vacate all the transactions on the ground that Johanna and Loretta were cognitively impaired at the time they were divested of their assets.

After a hearing, at which Johnston's attorney was present

and cross-examined witnesses, but did not call any witnesses himself, the Supreme Court granted the petitions and appointed guardians for the three women. Additionally, the Supreme Court, inter alia, revoked the deed transfers.

On appeal, Johnston alleges and the majority agrees, that she was denied procedural due process by the Supreme Court's failure to conduct a turnover proceeding pursuant to Mental Hygiene Law § 81.43. I respectfully disagree. Pursuant to Mental Hygiene Law § 81.43, a guardian may commence a proceeding to discover property withheld. Johnston, as the third party allegedly withholding the property, had no right to a turnover proceeding under that statute.

In any event, Johnston was not denied her due process rights. "The fundamental requisite of due process of law is the opportunity to be heard" (*Grannis v Ordean*, 234 US 385, 394 [1914]). Johnston had ample notice of the subject proceedings. Indeed, her attorney was present at the hearing, registered objections, and cross-examined witnesses. Johnston received a full opportunity to present evidence (*see Matter of Joseph S.*, 25 AD3d 804, 806 [2006]).

A review of the hearing transcript confirms that, at the conclusion of the petitioners' case, while Johnston was present in the courtroom, her attorney advised the court, "I will not put a case on, Judge." Further, the Supreme Court expressly stated, in Johnston's presence, that Johnston could testify "[w]ith respect to anything . . . the transactions, her relationship with the ladies involved here, anything she wishes to testify about." Johnston's counsel indicated that Johnston did not wish to testify. Under the circumstances of this case, Johnston's counsel's ultimate decision, after conferring with Johnston, not to present evidence did not render the hearing procedurally infirm or require that a separate turnover proceeding be conducted.

Finally, on the merits, I agree with the Supreme Court's determination, which, inter alia, determined that Johnston "exploited [the women's] cognitive impairments, and enriched herself as a consequence," and also engaged in "self-dealings." The Supreme Court, which was in the best position to assess credibility (*see Matter of Diamondstone v Connor*, 32 AD3d 482 [2006]), correctly determined that the evidence led to the "inexorable conclusion" that these women were exploited.

Accordingly, I would affirm the resettled order and judgment insofar as appealed from.