**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2028-21

J.R.,

     Petitioner-Appellant,

v.

HORIZON NJ HEALTH,

     Respondent-Respondent.

_____

          Argued December 13, 2023 – Decided February 5, 2024

          Before Judges Currier, Firko and Susswein.

          On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

          Dillon Scott Reisman argued the cause for appellant (American Civil Liberties Union of New Jersey Foundation, attorneys; Dillon Scott Reisman, Alexander R. Shalom, Jeanne M. LoCicero, on the briefs).

          Robert J. Norcia argued the cause for respondent Horizon NJ Health (Stradley, Ronon Stevens & Young, LLP; Adam J. Petitt, of counsel; Robert J. Norcia, on the brief).

Barkha Patel, Deputy Attorney General, argued the cause for respondent New Jersey Division of Medical Assistance and Health Services (Matthew J. Platkin, Attorney General, attorney; Donna Sue Arons, Assistant Attorney General, of counsel; Jacqueline R. D'Alessandro, Deputy Attorney General, on the brief).

Michael Raymond Brower, attorney for amicus curiae Disability Rights New Jersey (Melissa Zeidler and Arielle Schoenburg, on the brief).

Barry, Corrado, Grassi, PC, attorneys for amicus curiae National Health Law Program (Frank L. Corrado, on the brief).

PER CURIAM

Plaintiff J.R.,[1] a disabled child, appeals from a January 18, 2022 final agency decision by the Division of Medical Assistance and Health Services (DMAHS). DMAHS upheld the decision of J.R.'s Medicaid provider, defendant Horizon NJ Health, to reduce the hours of private duty nursing (PDN)[2] care

---

[1] We refer to J.R. by initials because we discuss her medical records. See R. 1:38-3(a)(2).

[2] For purposes of this appeal, PDN means: "[c]ontinuous nursing care, as different and apart from part-time or intermittent care, provided by licensed nurses in the community to eligible Medicaid Members inclusive of [Early and Periodic Screening, Diagnosis, and Treatment/Private Duty Nursing] beneficiaries." Horizon NJ Health, Private Duty Nursing, https://www.horizonnjhealth.com/for-providers/resources/policies/health-services-policies/utilization-management/private-duty (Dec. 13, 2023).

services J.R. receives. After carefully reviewing the record in light of the governing legal principles and the arguments of the parties, we affirm.

I.

We discern the following pertinent facts and procedural history from the record. In February 2019, J.R. was born premature and spent six months in a neonatal intensive care unit. She was diagnosed with numerous medical problems, including bronchopulmonary dysplasia, hypertension, patent ductus arteriosus, laryngomalacia, gastroesophageal reflux, and oral phase dysphagia. Because of these conditions, J.R. has received PDN services from Horizon 24 hours per day, 7 days per week.[3]

Pursuant to Medicaid regulations promulgated by DMAHS, the medical necessity of J.R.'s PDN care is subject to periodic reassessment. See N.J.A.C. 10:60-5.5. Horizon used a PDN Acuity Tool developed by a company, Milliman Care Guidelines, to determine the number of PDN hours J.R. should receive. The Tool consists of a list of different categories of a child's skilled nursing needs. The Tool calculates a total score based on the needs applicable to the child, which determines the recommended hours of PDN service.

---

[3] J.R.'s PDN authorization of 24 per hours per day has been maintained throughout the course of this litigation.

A nurse employed by Horizon, Tamaria Brown, RN, performed the PDN assessment. Brown utilized the PDN Acuity Tool based on her review of the skilled assessment form, the plan of care, and a letter of necessity from one of J.R.'s treating physicians, Dr. Maria Rivera-Penera, who requested "24 hours per day, 7 days per week of skilled nursing care. . . ." Brown testified she reviewed all 527 pages of nursing notes.

Brown forwarded the PDN Acuity Tool score and supporting documents to a Horizon medical director, Dr. Sariya Pacheco-Smith, who approved 24/7 PDN care for two months. After two months, PDN care would be reduced to 16 hours a day for one month, and then to 8 hours per day thereafter.

On November 4, 2020, Pacheo-Smith sent a letter to J.R. and her mother notifying them of the reduction in PDN hours. The letter included the following explanation:

> **Reason for this action:**
>
> The reason for this action is:
> The requested private duty nursing (PDN) hours for your child is denied. This is based on the information we were given about your child's health. I looked at the medical records provided. Your child has complex medical problems. She is on oxygen. Your child is not on a breathing machine. Your child is starting to take her feeds by mouth. She still receives some feeds and medications through a stomach tube. Based on this information (G-Tube feedings, aspiration precautions,

A-2028-21

oxygen needs, suctioning, positioning needs, etc.), she is approved for 24 hours per day, 7 days per week for 2 months, followed by 16 hours per day, 7 days per week for one month for transitional care. Your child will then be approved for 8 hours per day, 7 days per week ongoing.

The letter advised J.R. of her right to appeal.

J.R. filed an internal appeal. On January 7, 2021, Horizon upheld its initial determination, explaining:

**Reason for this action:**

The reason for our action is: The request for Private Duty Nursing Services for your child was reviewed again. We received more information to review. It is still denied. You asked for 24 hours per day, 7 days per week of this service. Private duty nursing is for members with extensive skilled needs (IE prolonged seizures, vent management, complicated tube feeds, etc.). Your child had an assessment by a nurse. The policy states that your child's nursing hours are determined by scoring of this assessment. Your child qualifies for 8 hours per day, 7 days per week of private duty nursing. Your child has been approved for this number of hours based on their skilled needs. Your child will be transitioned gradually to that amount starting 1/20/2021 with 16 hours per day. Your child will then receive 8 hours per day starting 2/19/2021.

The second letter explained J.R. had the option to appeal to an Independent Utilization Review Organization (IURO) or to request a Medicaid Fair Hearing. J.R. pursued both avenues of review. The IURO upheld Horizon's

5

decision. In July 2021, a Medicaid Fair Hearing was heard by an Administrative Law Judge (ALJ).

On November 23, 2021, the ALJ issued his initial decision, concluding "Horizon correctly applied the PDN Acuity Tool and correctly determined that, based on the most recent assessment of J.R.'s needs, the transition from 24 hours to 16 hours and finally 8 hours a day was reasonable and not violative of any of J.R.'s rights."

In support of that conclusion, the ALJ made the following factual findings:

> 1. No critical clinical evidence was provided for by petitioners which contradicted the information contained in the PDN Acuity Tool.
>
> 2. The reduction in time from 24 hours to 8 hours was based on the objective uncontradicted clinical evidence as described accurately by Nurse Brown and as provided in the admitted clinical documentary evidence.
>
> 3. There is no evidence that the PDN Acuity [T]ool as described heretofore under "Respondent's Evidence" was administered incorrectly.
>
> 4. While Nurse Brown did not personally observe the patient J.R., such observation is not usually part of the review process and should have made no difference in her testimony, as she is entitled to rely on the clinical information in the Plan of Care and the clinical assessments [of] Star Pediatric Agency, meaning a review of the PDN services provided over a two-week

A-2028-21

period to J.R., shortly before the change in services was determined.

The ALJ explained, "the use of the P[D]N Acuity [T]ool . . . would not appear to even approach a concern for a lack of due process or fundamental fairness."

J.R. did not file any exceptions to the ALJ's initial decision. On January 18, 2022, DMAHS rendered its final agency decision. It determined:

> The clinical records used by Nurse Brown to complete the tool reflected [p]etitioner's nursing needs and included services on the Plan of Care but not being currently performed. The PDN Acuity Tool then provided a score that aligned with a range of hours which is used "in conjunction with the application clinical judgment and proper consideration" of any unique circumstances. Petitioner's score resulted in a range of 4 to 7.9 hours and led Horizon to authorize 8 hours per day. I concur that [p]etitioner presented no evidence to contradict the use or accuracy of the PDN Acuity Tool by Horizon and the use of the tool is "reasonable and objective" to determine medical necessity for PDN hours. N.J.A.C. 10:60-5.3 and 10:74-1.4.

DMAHS upheld Horizon's determination. This appeal follows.

J.R. contends on appeal: (1) DMAHS erred in its decision because Horizon failed to provide sufficient reasons explaining its reduction of J.R.'s PDN care, violating J.R.'s procedural due process right to adequate notice; (2) Horizon relied on an unascertainable standard in violation of due process; and

7                                                          A-2028-21

(3) DMAHS erred in upholding Horizon's decision because it failed to consider J.R.'s doctor's clinical recommendations in its decision-making process.

Amicus National Health Law Program contends automated decision-making systems often hide inequities and errors, and transparency in such systems is needed to address bias and to safeguard the due process rights of Medicaid beneficiaries. Amicus Disability Rights New Jersey argues Horizon violated J.R.'s due process rights to adequate notice and a meaningful hearing by failing to explain how it calculated the number of PDN hours it believed to be medically necessary and by failing to submit any evidence that the Acuity Tool correctly applies the statutorily required standards for Medicaid eligible children. Amicus further contends "[t]he failure to ensure due process increases the likelihood of erroneous service cuts to Medicaid beneficiaries who lack the resources to defend or replace essential medical services, leading to a higher risk of unnecessary institutionalization" and "exacerbat[ing] the shortage of home and community-based services that allow people with disabilities to live as integrated members of their community."

II.

We begin our analysis by acknowledging the scope of our review is limited. "[A]n appellate court reviews agency decisions under an arbitrary and

capricious standard."  Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019); see also Melnyk v. Bd. of Educ. of the Delsea Reg'l High Sch. Dist., 241 N.J. 31, 40 (2020).  "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'"  Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)).  We owe "substantial deference to the agency's expertise and superior knowledge of a particular field."  In re Herrmann, 192 N.J. 19, 28 (2007).  The party challenging the administrative action bears the burden of making that showing.  Lavezzi v. State, 219 N.J. 163, 171 (2014).

A reviewing court is not, however, "bound by an agency's interpretation of a statute or its determination of a strictly legal issue" outside its charge. Allstars Auto. Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 158 (2018); Dep't of Child. & Fam. v. T.B., 207 N.J. 294, 302 (2011); see also Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992) (agencies "have no superior ability to resolve purely legal questions," and "a court is not bound by an agency's determination of a legal issue . . . .").

III.

We first address J.R.'s contention "DMAHS erred in its final agency decision because Horizon failed to provide sufficient information or reasons explaining its reduction of J.R.'s PDN care, violating J.R.'s procedural due process right to adequate notice." In Goldberg v. Kelly, a case involving financial aid under a federally assisted program, the United States Supreme Court held "[t]he fundamental requisite of due process of law is the opportunity to be heard." 397 U.S. 254, 267 (1970) (quoting Grannis v. Ordean, 234 U.S. 385, 394 (1914)). The Court explained "these principles require that a [federally assisted program] recipient have timely and adequate notice detailing the reasons for a proposed termination [of assistance], and an effective opportunity to defend by confronting any adverse witnesses and by presenting his [or her] own arguments and evidence orally." Id. at 267-68. The Third Circuit Court of Appeals has noted in a like vein that "[s]uch notice is necessary to protect claimants against proposed agency action 'resting on incorrect or misleading factual premises or on misapplication of rules to policies of the facts of particular cases.'" Ortiz v. Eichler, 794 F.2d 889, 893 (3d Cir. 1986) (quoting Goldberg, 397 U.S. at 268).

But on the record before us, we are unpersuaded J.R. was "forced to appeal without adequate information." N.J.A.C. 10:49-10.4 governs the content of

notices to beneficiaries when a "Medicaid Agent or DMAHS" proposes to "terminate, reduce or suspend assistance." That regulation provides in pertinent part:

> "Adequate advance notice" means a written notice that includes a statement of the action the Medicaid Agent or DMAHS intends to take, reasons for the proposed departmental action, the specific regulations that support, or the change in Federal or State law that requires the action, the claimant's right to request a [F]air [H]earing, or in cases of a departmental action based on a change in law, the circumstances under which a hearing shall be granted, and the circumstances under which assistance shall be continued if a [F]air [H]earing is requested.
>
> [N.J.A.C. 10:49-10.4]

Here, there was written notice to J.R. The notice included a statement of the action taken stating, "[J.R.] is approved for 24 hours per day, 7 days per week for 2 months, followed by 16 hours per day, 7 days per week for one month for transitional care. Your child will then be approved for 8 hours per day, 7 days per week ongoing." The reason for the action was information about J.R.'s health, including the progress she made, reducing the need for 24/7 PDN services. The first letter explained "[y]our child has complex medical problems. She is on oxygen. Your child is not on a breathing machine. Your child is

11

starting to take her feeds by mouth. She still receives some feeds and medications through a stomach tube."

Horizon "acknowledges that its initial and internal appeal determinations did not specifically cite the Medicaid regulations . . . ." Rather, the authority cited to support its decision was "Horizon NJ Health Policy-31C.096 Private Duty Nursing." The ALJ nonetheless rejected J.R.'s argument the notice was inadequate because it failed to specify which regulations were relied upon, noting the Horizon Health Policy-31C.096 PDN "was developed as authorized by Horizon's State Medicaid Contract as provided for in N.J.A.C. 10:74-1.4 Exhibit."

On the record before us, we have no basis upon which to overturn the findings of both the ALJ and DMAHS that Horizon adequately explained the reasons for its decision to reduce PDN services as to permit a meaningful appeal of that decision. But even if we were to assume for the sake of argument the reasons stated in Horizon's two letters lack sufficient detail to explain the basis for its decision, J.R. had the benefit of an evidentiary hearing before an ALJ. At that proceeding, J.R. had the right to discovery, to subpoena witnesses, and to call her own witnesses, including experts. J.R. is hard pressed to claim her due process rights were violated given that she had the benefit of an internal appeal

12

to Horizon, an external appeal to an IURO, and a Fair Hearing before an ALJ while represented by counsel and after conducting pre-hearing discovery.

We add that well in advance of the plenary hearing, indeed, in the initial Horizon letter, J.R. was advised of Horizon's reliance on the PDN Acuity Tool. If J.R. hoped to challenge the medical reliability of that Tool, she did not lay the foundation for any such challenge at the plenary hearing.

That leads us to J.R.'s contention that DMAHS erred in its decision because Horizon relied on an "unascertainable standard." In her reply brief, J.R. argues "neither Horizon nor DMAHS have presented any evidence that the Tool is reliable or accurate in the realm of EPSDT/PDN decision-making." In view of the record and procedural posture of this case, we are unpersuaded by J.R.'s contention the Tool itself is unreliable. DMAHS found Horizon's reduction of J.R.'s PDN hours as determined by the PDN Acuity Tool "was reasonable and based on the assessment of Petitioner's needs." The ALJ found "the employment of the PDN Acuity [T]ool appears reasonable and objective and authorized by New Jersey's Medicaid regulations, notwithstanding a lack of cases directly interpreting or containing analysis of reliance on the PDN Acuity Tool." As we have noted, J.R. did not file any exceptions to the ALJ's initial decision.

DMAHS, in its final agency decision, adopted the ALJ's conclusion regarding the Acuity Tool, stating:

> The clinical records used by Nurse Brown to complete the tool reflected [p]etitioner's nursing needs and included services on the Plan of Care but not being currently performed. The PDN Acuity Tool then provided a score that aligned with a range of hours which is used "in conjunction with the application clinical judgement and proper consideration" of any unique circumstances. Petitioner's score resulted in a range of 4 to 7.9 hours and led Horizon to authorize 8 hours per day. I concur that Petitioner presented no evidence to contradict the use or accuracy of the PDN Acuity Tool by Horizon and the use of the tool is "reasonable and objective" to determine medical necessity for PDN hours. N.J.A.C. 10:60-5.3 and 10:74-1.4.

DMAHS further acknowledged "numerous courts and commentators have identified the Milliman Care Guidelines as 'nationally recognized' and 'widely used.'" On the record before us, we have no basis upon which to conclude DMAHS's determination regarding the Acuity Tool is arbitrary, capricious, or unreasonable.

IV.

Finally, we address J.R.'s contention "DMAHS erred in upholding Horizon's decision because Horizon violated the legal requirements of Medicaid's [EPSTD] provisions when it failed to consider J.R.'s doctor's clinical

14

recommendation in its decision-making process." J.R.'s contention that her doctor's clinical recommendation was ignored is belied by the record.

Nurse Brown testified she reviewed all the assessments when completing J.R.'s evaluation, which included the letter of medical necessity from Dr. Rivera-Penera. She also testified she checked off the category for oxygen because the letter of medical necessity included possible episodes of choking. Brown likewise testified she checked off "safety management" as well because "for safety management, it gives you that option to put aspiration precaution as well, which the aspiration precaution was mentioned in the plan of care, as well as the letter of medical necessity." Therefore, it is clear Brown considered the doctor's clinical recommendation in her assessment.

In sum, we conclude DMAHS's final agency decision was based on substantial credible evidence in the record and was not arbitrary, capricious, or unreasonable as to warrant appellate intervention.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2028-21