of the term "unreasonable," and as the term is known throughout the jurisprudence, it is abundantly clear that the Michigan courts unreasonably applied Supreme Court precedent under an objective standard in refusing to allow testimony regarding Rockwell's alleged sexual abuse of his sons into evidence because, in doing so, the state deprived Petitioner of her Fifth Amendment right to present a defense and effectively left Petitioner with no defense at all.

Accordingly, I respectfully dissent.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0237P (6th Cir.)
File Name:  02a0237p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SHARON MAY ROCKWELL,
            *Petitioner-Appellee,*

            *v.*                                          No. 00-1992

JOAN YUKINS,
            *Respondent-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-71072—Avern Cohn, Senior District Judge.

Argued:  October 23, 2001

Decided and Filed:  July 17, 2002

Before:  NELSON, CLAY, and GARWOOD, Circuit
Judges.[*]

_____

[*]The Honorable William Garwood, United States Circuit Judge for the Fifth Circuit, sitting by designation.

---

**COUNSEL**

**ARGUED:** Laura Graves Moody, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Craig A. Daly, Detroit, Michigan, for Appellee. **ON BRIEF:** Laura Graves Moody, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Craig A. Daly, Detroit, Michigan, for Appellee.

NELSON, J., delivered the opinion of the court, in which GARWOOD, J., joined. CLAY, J. (pp. 11-20), delivered a separate dissenting opinion.

---

**OPINION**

---

DAVID A. NELSON, Circuit Judge. For the second time, Michigan prison warden John Yukins has appealed a writ of habeas corpus granted to convicted murder conspirator Sharon Rockwell. Under the legal standard prescribed by the Antiterrorism and Effective Death Penalty Act of 1996, the writ should not have been issued unless Mrs. Rockwell's conviction in state court involved an "unreasonable" application of federal law clearly established by the United States Supreme Court or unless the conviction was flat-out contrary to such clearly established law. Concluding that the result reached in the state court passes muster under the statutory test, we shall reverse the decision in which the federal district court granted habeas relief.

I

As we explained in our earlier opinion, see *Rockwell v. Yukins*, 217 F.3d 421, 422-23 (6th Cir. 2000), Mrs. Rockwell and her husband, Edward Rockwell, had three sons. One of

reasonable limits on defense counsel's inquiry into the potential bias of a prosecution witness, to take account of such factors as "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that [would be] repetitive or only marginally relevant," *Delaware v. Van Arsdall,* [475 U.S. 673,] 679 [1986], the limitation here was beyond reason. Speculation as to the effect of jurors' racial biases cannot justify exclusion of cross-examination with such strong potential to demonstrate the falsity of [the victim's] testimony.

*Id.*

In the matter at hand, it is true that Petitioner sought to introduce evidence not to show bias of a witness, but to demonstrate the viability of her defense; however, in either case, the evidence sought to be introduced was relevant to demonstrating the truth or falsity of testimony critical to the petitioner's guilt or innocence. And, where the evidence of Rockwell's years of alleged sexual abuse of the boys provided the very basis for Petitioner's "talk therapy," speculation about how this evidence would have prejudiced the jury cannot serve to justify the exclusion of the evidence. *See Olden*, 488 U.S. at 232; *see also Crane*, 476 U.S. at 690 (finding that the right to present a complete defense is firmly rooted in the Constitution, whether argued under the Fifth or Sixth Amendment). As a result, under an objective standard, the Michigan courts unreasonably applied *Olden* in excluding evidence of Rockwell's alleged sexual abuse of his sons as being more prejudicial than probative.

In light of the above analysis, it is difficult to comprehend the majority's position. As noted at the outset of this dissent, the Supreme Court has guided us that while the term "unreasonable" is "no doubt difficult to define," it is nonetheless "a common term in the legal world, and, accordingly, federal judges are familiar with its meaning." *Williams*, 529 U.S. at 411. As I am familiar with the meaning

introduce evidence of the reason for the boys' hatred of their father – Rockwell's many years of sexual abuse. Without this evidence, it is plain that Petitioner's defense may have appeared much less credible in the eyes of the jury. The evidence, therefore, was highly relevant to Petitioner's "talk therapy" defense, and the refusal to admit the evidence was objectively unreasonable in light of *Crane*.

On the issue of relevancy, the majority contends that in striking the balance between the evidence's probative value versus its prejudicial effect as it did, "the Michigan court may or may not have erred, but we are not persuaded that it was applying *Davis v. Alaska* (or any other United States Supreme Court decision of which we are aware) in a way that could fairly be described as 'objectively unreasonable.'" The discussions of *Davis* and *Crane* as set forth above illustrate why the Michigan courts were objectively unreasonable in finding that evidence Rockwell's alleged sexual abuse of his sons was more prejudicial than probative of Petitioner's "talk therapy" defense; however, the case of *Olden v. Kentucky*, 488 U.S. 227 (1988) further illustrates the unreasonableness of the state courts' rulings.

In *Olden*, the issue before the Court was whether the Kentucky state courts had violated the petitioner's Sixth Amendment right to cross-examination by ruling that evidence of the victim's interracial relationship with the petitioner was inadmissible as being more prejudicial than probative. *See Olden*, 488 U.S. at 232. Specifically, the Court opined:

> The Kentucky Court of Appeals did not dispute, and indeed acknowledged, the relevance of the impeachment evidence. Nonetheless, . . . the court held that petitioner's right to effective cross-examination was outweighed by the danger that revealing [the victim's] interracial relationship would prejudice the jury against her. While a trial court may, of course, impose

the sons, acting with two friends, attempted to kill Mr. Rockwell by cutting the brake lines on his car. The attempt failed. The boys then made another unsuccessful attempt on Mr. Rockwell's life, this time by hitting him on the head with a baseball bat. Although Mrs. Rockwell was not present on either occasion, she had previously engaged in discussions with one or more of her sons about killing Mr. Rockwell. The State of Michigan therefore charged Mrs. Rockwell with conspiracy to commit murder.

Mrs. Rockwell's defense, as her lawyer described it at a pretrial hearing, was that her participation in the discussions about killing Mr. Rockwell was not intended to further an actual murder; rather, according to counsel, Mrs. Rockwell's purpose had been to let the boys vent the extreme and abiding hatred they harbored against their father for having abused them, sexually and otherwise, when they were younger. "[Mrs. Rockwell] felt in her heart that the only way she could keep the situation under control," defense counsel explained, "was to allow the boys to talk and fantasize about [killing the hated Mr. Rockwell.]" Far from agreeing to a murder, the theory went, Mrs. Rockwell hoped to forestall a murder through what her lawyer seems to have viewed as some sort of talk therapy.

In connection with this "therapy defense," as we characterized it in our earlier opinion, Mrs. Rockwell hoped to show at trial that Mr. Rockwell had in fact abused his sons. The prosecution hoped to exclude evidence of the alleged abuse, and to that end the prosecution filed a motion *in limine*. The state trial court granted the motion, concluding that the evidence in question was not "material" under Mich. Rule of Evid. 404.[1]

---

[1] Although the prosecution had cited Rule 404 in argument, the relevance of that rule in this context is not readily apparent. Rule 404 provides that, subject to a series of exceptions, evidence of a person's character is not admissible for the purpose of proving that the person

When the case went to trial, Mrs. Rockwell elected not to take the stand. The jury returned a verdict of guilty, and Mrs. Rockwell was sentenced to imprisonment for life. An appeal to the Michigan Court of Appeals followed.

The Michigan Court of Appeals affirmed the conviction, succinctly explaining its rationale as follows:

"We find no abuse of discretion in the trial court's exclusion of evidence of the victim's alleged prior acts of abuse against defendant's and the victim's children. *People v. Watkins*, 176 Mich. App. 428; 440 NW2d 36 (1989). Defendant was merely limited in the method with which to present her defense and not deprived [of] the opportunity to present the same. Although marginally relevant, the evidence was properly excluded under MRE 403."[2]

Mrs. Rockwell applied to the Michigan Supreme Court for leave to appeal the affirmance of her conviction, but that court denied further review.

On March 19, 1997, Mrs. Rockwell commenced her habeas corpus action in the United States District Court for the Eastern District of Michigan. The initial pleading raised two issues (insufficiency of the evidence and improper exclusion of the evidence of sexual abuse), both of which had been exhausted in the state courts. The district court subsequently granted Mrs. Rockwell leave to amend her petition to include an unexhausted claim. Following a hearing at which arguments were presented on the merits, the district court

---

acted in conformity therewith on a particular occasion.

[2] Rule 403 – which had also been cited in argument before the state trial court – provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

---

The Court went on to find that under the facts of the case before it, "the Kentucky courts [had] erred in foreclosing petitioner's efforts to introduce testimony about the environment in which the police secured his confession." *Crane*, 476 U.S. at 691. The Court opined that

evidence about the manner in which a confession was obtained is often highly relevant to its reliability and credibility. Such evidence was especially relevant in the rather peculiar circumstances of this case. Petitioner's entire defense was that there was no physical evidence to link him to the crime and that, for a variety of reasons, his earlier admission of guilt was not to be believed. To support that defense, he sought to paint a picture of a young, uneducated boy who was kept against his will in a small, windowless room for a protracted period of time until he confessed to every unsolved crime in the county, including the one for which he now stands convicted. We do not, of course, pass on the strength or merits of that defense. We do, however, think it plain that introducing evidence of the physical circumstances that yielded the confession was all but indispensable to any chance of its succeeding.

*Id.*

Likewise, in the matter at hand, evidence of the circumstances that caused Petitioner to engage in this "talk therapy" was "all but indispensable to any chance of [her defense] succeeding." *See Crane,* 476 U.S. at 691. Indeed, Petitioner's entire defense was that she participated in her sons' discussions about killing Rockwell as a means of allowing the boys to vent their anger for Rockwell. These discussions, the defense goes, never amounted to an agreement to kill for purposes of securing a conspiracy conviction, but were Petitioner's way of comforting her sons and preventing, not causing, the already volatile situation to escalate. To support this defense, Petitioner sought to

opposed to helping it. Without knowing the reason behind the boys' hatred of Rockwell, the jury may also have believed that the boys hated him at Petitioner's behest, thereby adding credence to the prosecution's claim that Petitioner formed an agreement with her sons to kill Rockwell. Simply put, without the evidence at issue, defense counsel was unable to fully defend Petitioner. *See Davis*, 415 U.S. at 318 (finding that without evidence of bias on the part of the accuser, defense counsel was unable to fully defend the petitioner). In light of this, the state courts unreasonably applied the principles behind *Davis* to the facts of this case under an objective standard.

*Crane v. Kentucky*, provides further grounds for concluding that the state courts unreasonably applied Supreme Court precedent in excluding testimony of Rockwell's alleged sexual abuse of his sons. In *Crane*, the Court held that the exclusion of testimony regarding the circumstances under which his confession was obtained deprived the petitioner of this fundamental constitutional right – *whether under the Due Process Clause of the Fourteenth Amendment or under the Compulsory Process or Confrontation Clauses of the Sixth Amendment* – to present a defense. *See* 476 U.S. at 690-91. In doing so, the Court noted that it was "break[ing] no new ground in observing that an essential component of procedural fairness is an opportunity to be heard." *See id*. at 690 (citing *In re Oliver*, 333 U.S. 257, 273 (1948); *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). To that end, the Court found that this "opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence." *Id.* As a result, the Court concluded that "[i]n the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and 'survive the crucible of meaningful adversarial testing.'" *Id.* at 690-91 (quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)).

granted the writ on the ground that the state trial court's decision to exclude evidence of the alleged sexual abuse clearly violated Mrs. Rockwell's constitutional right to present a defense – and "[n]o reasonable jurist could conclude otherwise."

The soundness of this proposition was not decided in the initial appeal to our court. The panel that heard the appeal vacated the judgment on the ground that the district court should not have reviewed a "mixed" petition containing an unexhausted claim in addition to the exhausted claims. The case was remanded with a suggestion that the district court could reenter its original decision after allowing Mrs. Rockwell to dismiss her unexhausted claim. See *Rockwell v. Yukins*, 217 F.3d at 425.

On remand, this suggestion was accepted. Mrs. Rockwell moved for dismissal of her unexhausted claim and reentry of the habeas judgment, and the district court granted the motion. The warden has again appealed to our court, and we are now in a position to reach the merits of the case.

II

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), subsection (d) of 28 U.S.C. § 2254 provides, in relevant part, as follows:

"(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ."

This version of the statute applies to habeas applications filed, as Mrs. Rockwell's was, after April 24, 1996, the effective date of AEDPA. See *Lindh v. Murphy*, 521 U.S. 320 (1997).

The statute means what it says. See *Williams v. Taylor*, 529 U.S. 362, 402-13 (2000). What the statute says, to repeat, is that habeas relief may not be granted unless the state court's decision was either "contrary to . . . clearly established federal law, as determined by the Supreme Court of the United States"[3] or "involved an unreasonable application of . . . [such] law."

Mrs. Rockwell does not contend that the affirmance of her conviction by the state court of appeals was "contrary to" clear Supreme Court caselaw. She does contend, however, that it involved an unreasonable application of such law, on which account she claims entitlement to federal habeas relief.

For this contention to be sustained, Mrs. Rockwell needs to do more than persuade us that the Michigan judiciary's application of federal law was incorrect. As Justice O'Connor said, speaking for the Court in *Williams*,

"In § 2254(d)(1), Congress specifically used the word 'unreasonable,' and not a term like 'erroneous' or 'incorrect.' Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must

---

[3]The condition of this "contrary to" clause would be met if "the state court arrive[d] at a conclusion opposite to that reached by [the U.S. Supreme] Court on a question of law or if the state court decide[d] a case differently than [the U.S. Supreme Court has] on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.

make a record from which to argue why Green might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness or, as the prosecutor's objection put it, a 'rehash' of prior cross-examination. On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. Petitioner was thus denied the right of effective cross-examination which "would be constitutional error of the first magnitude . . . ."

*Id.* at 317-18 (citations and footnote omitted).

Here, likewise, the "accuracy and truthfulness" of Petitioner's testimony was critical to the prosecution's case against her, and because defense counsel was limited in his examination of Petitioner as to her "talk therapy" defense, "the jury might well have thought that defense counsel was engaged in a speculative" theory of defense. *See Davis*, 415 U.S. at 317-18. However, had defense counsel been able to examine Petitioner regarding the basis for her "talk therapy" theory, the jury might well have thought otherwise. Indeed, without more, Petitioner's "talk therapy" as a basis for the boys to vent their hatred for their father may very well have worked against Petitioner inasmuch as the jury may have believed that Petitioner's sons hated their father because he demanded that they excel in school, or strictly prevented them from using drugs or alcohol. In other words, without more, the jury may have thought the sons hated Rockwell because he was being a *good*, albeit perhaps strict, father, such that Petitioner's approval of the boys speaking of killing Rockwell as a form of "talk therapy" may have hurt her defense as

Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (citations and internal quotation marks omitted); *see also Strickland v. Washington*, 466 U.S. 668, 684-85 (1984) ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment . . . ."). Accordingly, the fact that *Davis* involved the Sixth Amendment does nothing to change its applicability to the matter at hand inasmuch as the logic and reasoning for concluding that Petitioner was denied her due process right to present a defense is the same as that used to find the petitioner's right to confrontation was denied in *Davis*.

To illustrate, although the petitioner in *Davis* premised his claim on a violation of his Sixth Amendment right to confrontation, the Court found that the right was violated because the petitioner had been prevented from fully presenting his defense by the limited cross-examination of a key witness. *See Davis*, 415 U.S. at 317-18. Specifically, the Court opined:

> The accuracy and truthfulness of Green's [the key witness for the prosecution] testimony were key elements in the State's case against petitioner. The claim of bias which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of Green's vulnerable status as a probationer, as well as Green's possible concern that he might be a suspect in the investigation.

> We cannot accept the Alaska Supreme Court's conclusion that the cross-examination that was permitted defense counsel was adequate to develop the issue of bias properly to the jury. While counsel was permitted to ask Green whether he was biased, counsel was unable to

also be *unreasonable*." *Williams,* 529 U.S. at 411 (emphasis supplied).

"[A]n unreasonable application of federal law is different from an *incorrect* or *erroneous* application of federal law." *Id.* at 412 (emphasis in original). And in making the "unreasonable application" inquiry, we "should ask whether the state court's application of clearly established federal law was 'objectively' unreasonable." *Id.* at 409.

In Mrs. Rockwell's case, as we have seen, the Michigan Court of Appeals concluded that the probative value of the evidence of Edward Rockwell's alleged abuse of his sons was substantially outweighed by the danger of unfair prejudice that might ensue were the evidence to be admitted. This conclusion may or may not have been erroneous, but we cannot say that it represented an objectively unreasonable application of clearly established Supreme Court precedent.

A Supreme Court decision that the district court found "particularly instructive" is *Davis v. Alaska*, 415 U.S. 308 (1974). The question presented there was whether, under the Confrontation Clause of the Sixth Amendment, the defendant in a burglary case – petitioner Joshaway Davis – had a constitutional right to cross-examine a crucial witness for the prosecution about a juvenile burglary adjudication for which the witness was on probation. The purpose of the proposed cross-examination was to try to convince the jury that the witness had falsely fingered Joshaway Davis out of fear that otherwise the witness himself would be a suspect and his probation would be revoked. The Supreme Court held that Davis had a constitutional right to confront the witness with questions along these lines.

"Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested," as the *Davis* Court explained. Against this background the Court concluded that "the jurors were entitled to have the benefit of the defense theory before them so that

they could make an informed judgment as to the weight to place on [the juvenile's] testimony which provided 'a crucial link in the proof . . . of petitioner's act.'" *Id.* at 316 and 317 (citation omitted).

In the case at bar, by contrast, the evidence that Mr. Rockwell had abused his sons was being proffered to not show bias on the part of a crucial witness against Mrs. Rockwell, but to shore up Mrs. Rockwell's own projected testimony about her "therapy." The Michigan Court of Appeals recognized that the sexual abuse evidence was marginally relevant, but the court concluded that its probative value was substantially outweighed by the danger of unfair prejudice – the danger that the jury would be tempted to acquit Mrs. Rockwell not because of any sense that she was innocent of conspiring with her sons to kill Mr. Rockwell, but because of a sense that killing would be too good for such a man. The court was concerned, in other words, that instead of using relevant evidence to reach a proper result under the written law, the jury might use the evidence to reach an improper result under the unwritten law. In striking the balance as it did the Michigan court may or may not have erred, but we are not persuaded that it was applying *Davis v. Alaska* (or any other United States Supreme Court decision of which we are aware) in a way that could fairly be described as "objectively unreasonable."

The constitutional right asserted by Mrs. Rockwell is not the Sixth Amendment right of confrontation, of course, but a Fifth Amendment due process right – the right to present a defense. As the district court properly acknowledged, the right to present a defense is not an unlimited right to present evidence without regard to reasonable evidentiary restrictions. On the contrary, the court pointed out, quoting from *United States v. Scheffer*, 523 U.S. 303, 308 (1998), the Supreme Court has explicitly recognized that "[a] defendant's interest in presenting . . . evidence may [have to] bow to accommodate other legitimate interests in the criminal trial

limiting the jury's basis for judging the credibility of the key witness is the same.

The majority contends that the result is not the same inasmuch as evidence of Rockwell's alleged sexual abuse, according to the majority, "was being proffered to not show bias on the part of a crucial witness against [Petitioner], but to shore up [Petitioner's] own projected testimony about her 'therapy.'" The shortsightedness of this contention is that Petitioner's testimony as to the reason for her "talk therapy" was that of a crucial witness, albeit a witness for the defense and not the prosecution, whose testimony went directly to the state's claim against her. Contrary to the majority's reasoning, it is of no moment whether the excluded evidence went to determining the credibility of testimony proffered against the petitioner (as was the case in *Davis*), or whether the evidence went to the credibility of testimony proffered in favor of the petitioner (as is the case here). *See, e.g., Washington v. Texas*, 388 U.S. 14, 19 (1967) ("Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."). In each instance the testimony went to determining the petitioner's guilt and, therefore, in each instance "the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the witness'] testimony which provided a crucial link in the proof . . . of petitioner's act." *Davis*, 415 U.S. at 317 (internal quotation marks and citation omitted).

The majority also attempts to distinguish *Davis* by noting that *Davis* involved the petitioner's Sixth Amendment right to confrontation, while the case at hand involves Petitioner's Fifth Amendment right to present a defense. This distinction has no basis in the jurisprudence of the Supreme Court. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth

to show otherwise falls short. For example, the majority rejects the district court's reliance on *Davis v. Alaska*, 415 U.S. 308 (1974) to show that the Michigan courts unreasonably applied Supreme Court precedent to the facts of Petitioner's case. However, the majority's reasoning simply amounts to a distinction without a difference inasmuch as in *Davis,* as well as in the matter at hand, the defendant was not allowed to present all evidence to show the "accuracy and truthfulness" as to the testimony of a key witness which went to key elements of the prosecution's claim. Specifically, in *Davis*, the petitioner argued that evidence regarding the veracity of the testimony from a key witness for the prosecution should not have been excluded from trial. *Id.* at 317. In agreeing with the petitioner, the Supreme Court found that "the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the witness'] testimony which provided a crucial link in the proof . . . of petitioner's act." *Id.* (internal quotation marks and citation omitted). The Court reasoned that "[t]he accuracy and truthfulness of [the witness'] testimony were key elements in the State's claim against the petitioner." *Id.*

Similarly, in the matter at hand, the accuracy of Petitioner's testimony went to a key element in the state's claim against her inasmuch as whether the talk of killing Rockwell was an agreement for purposes of securing a conspiracy conviction depended upon whether the jury believed Petitioner's "therapy defense." The credibility of Petitioner's testimony in presenting this defense, in turn, depended upon whether the jury was aware of all of the evidence supporting it – including evidence of Rockwell's alleged sexual abuse – so that the jury "could make an informed judgment as to the weight to place on" Petitioner's testimony. *See Davis*, 415 U.S. at 317. Although it is true that in *Davis*, the credibility of the testimony at issue was that of a key witness for the prosecution, while in the matter at hand the credibility of the testimony at issue is that of Petitioner, the end result of

process." It was not objectively unreasonable, in our view, for the Michigan court to conclude that "other legitimate interests in the criminal trial process" outweighed Mrs. Rockwell's interest in buttressing her projected testimony with evidence of her husband's despicable behavior.

What is controlling here is the familiar concept that the defendant in a criminal case "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). Rather, she "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). As the Supreme Court explained in *Scheffer*:

> "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at 308 (citations omitted).

The Constitution does, to be sure, "guarantee[] criminal defendants 'a meaningful opportunity to present a *complete* defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations omitted) (emphasis supplied). That guarantee would have been violated here, no doubt, if the Michigan courts had prevented Mrs. Rockwell from introducing any testimony bearing on the circumstances under which the discussions with her sons were conducted. But that did not happen. The state trial court's ruling did not bar Mrs. Rockwell from testifying that her sons hated their father. It did not bar her from explaining that the boys had been beaten and subjected to psychological abuse by the man they talked

of killing.[4]  It did not bar her from telling the jury that she thought such talk was healthy; that she did not think it would lead to overt action; and that she had never been a party to any mutual understanding or agreement to commit murder. Under these circumstances, in our judgment, it was not unreasonable for the Michigan Court of Appeals to conclude that Mrs. Rockwell's opportunity to present a complete defense was not unconstitutionally impaired.

The decision of the district court is **REVERSED**, and the case is **REMANDED** with instructions to dismiss the petition.

---

[4]By the same token, the ruling did not bar Mrs. Rockwell from simply testifying that the boys had an intense hatred of their father because of what he had done to them.  Such a tack would have posed something of a dilemma for the prosecution.  If the testimony had gone unchallenged, the jury might well have accepted it.  If the prosecution had cross-examined Mrs. Rockwell as to what she meant, on the other hand, or if it had presented the husband as a witness and evoked a denial that he had done anything to cause the boys to hate him, the door would then have been opened, in all probability, for Mrs. Rockwell to present evidence of the alleged sexual misconduct.

---

**DISSENT**

---

CLAY, Circuit Judge, dissenting.  Because I believe that the state courts unreasonably applied controlling Supreme Court precedent in rejecting Petitioner's claim that she was denied her Fifth Amendment right to present a complete defense by excluding evidence of Edward Rockwell's alleged sexual abuse of his sons, I would affirm the district court's order granting Petitioner's application for a writ of habeas corpus.  Evidence of Rockwell's alleged sexual abuse of his sons was at the core of Petitioner's "talk therapy" defense, such that without this evidence, Petitioner's defense had little chance of appearing meritorious in the eyes of the jury.

The Supreme Court has instructed that "an unreasonable application of federal law is different from an incorrect application of federal law," and that a federal court may not grant a writ of habeas corpus under § 2254 because the court concludes in its independent judgment that the state court applied clearly established federal law "erroneously or incorrectly."  *See Williams v. Taylor*, 529 U.S. 362, 411 (2000).  The Court went on to recognize that "unreasonable" is "no doubt difficult to define," but also noted that "it is a common term in the legal world, and, accordingly, federal judges are familiar with its meaning."  *Id.*  When considering Petitioner's claim in the matter at hand, the "unreasonableness," as that term is commonly known, of the Michigan courts' decisions under prevailing Supreme Court precedent could not be more clear. By excluding evidence of the very basis for Petitioner's "talk therapy" defense, the Michigan courts "unreasonably" denied Petitioner her constitutional right to present a "complete defense."

The district court's reasoning in granting the petition in this case is both sound and persuasive, and the majority's attempt