

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-09-00039-CV**

IN THE MATTER OF THE
GUARDIANSHIP OF ERMA LEE
BAYS, AN INCAPACITATED
PERSON

------------

FROM PROBATE COURT NO. 2 OF TARRANT COUNTY

------------

## OPINION

------------

## I. INTRODUCTION

Appellant Nyagudi O. Okumu appeals the trial court's order that, among other things, appointed Appellee Wells Fargo Bank, N.A. as the temporary guardian of the estate of Erma Lee Bays. In four issues, Okumu contends that the trial court failed to properly serve him notice of the temporary guardianship hearing; that the trial court deprived him of due process of law when it ordered that he turn over funds to the trial court's registry; that the trial court's order requiring him to turn over funds is not supported by the pleadings or evidence

and is vague and ambiguous; and that the trial court lacked jurisdiction to hold him in contempt. We will affirm.

## II. BACKGROUND

On September 15, 2008, a social worker filed a suggestion of need for guardianship or need for investigation of circumstances under probate code section 683. *See* Tex. Prob. Code Ann. § 683 (West Supp. 2010). Among other information, the suggestion stated that Bays, the proposed ward, had transferred money to Okumu and that Bays was unable to care for her own physical health and manage her own financial affairs. Attached to the suggestion was a physician's certificate of medical examination indicating that Bays was partially incapacitated and was unable to handle her financial affairs. Based on the suggestion, the trial court appointed a court investigator and a guardian ad litem to investigate.

Based on her investigation, the guardian ad litem filed an application for letters of guardianship on October 27, 2008. The guardian ad litem requested that the trial court appoint a permanent guardian of the person and the estate of Bays. Following the filing of the application for guardianship, the trial court appointed an attorney ad litem to represent Bays on November 18, 2008.

Okumu filed a pro se motion on November 20, 2008, asking the trial court to inform him of any actions taken in the case and asking the court to recognize that Bays had given him her power of attorney. On November 24, 2008, Okumu filed another motion titled "Answer to Application for Letters of Guardianship

2

Section 683, Texas Probate Code and a Motion for Continuance on the Hearing Therein." In that motion, Okumu claimed to have an "interest in the welfare of [Bays]." Okumu's attorney filed a notice of appearance as counsel on January 5, 2009. That attorney filed a contest to the guardianship. In his contest, Okumu claimed that Bays did not need a guardian. He alternatively requested that the trial court appoint him as the guardian.

On January 21, 2009, the guardian ad litem filed an application for temporary guardianship. *See id.* § 875 (West Supp. 2010). In the pleading, the guardian ad litem alleged that emergency relief was needed because Okumu had withdrawn over $200,000 from bank accounts held in Bays's name and closed them. The trial court held a hearing on January 27, 2009, regarding the temporary guardianship. Okumu, accompanied by new counsel, attended the hearing, asked the court to rule on Okumu's previous attorney's request to be removed as his counsel, and requested a continuance. The trial court denied the continuance, allowed Okumu's substitution of counsel, and conducted the temporary guardianship hearing. At the close of the hearing, the trial court appointed temporary guardians—a temporary guardian of Bays herself and Wells Fargo as temporary guardian of her estate. In its temporary guardianship order, the trial court ordered Okumu to place funds that had been removed from Bays's accounts or from accounts held jointly in Okumu's and Bays's names, into the trial court's registry. Okumu did not comply. The trial court eventually found Okumu in contempt and ordered him incarcerated. This appeal followed.

3

## III. Discussion

### A. Notice to Bays and the Trial Court's Jurisdiction

In part of his first issue, Okumu contends that Bays was never "personally served with citation" before the guardianship hearing. Thus, according to Okumu, the trial court lacked jurisdiction to enter an order appointing temporary guardians for Bays.

Section 875(e) of the probate code states that "[o]n the filing of an application for temporary guardianship, the clerk shall issue notice *that shall be served on the respondent*, the respondent's appointed attorney, and the proposed temporary guardian named in the application, if that person is not the applicant." Tex. Prob. Code Ann. § 875(e). Relevant to this case, a party may resort to substituted service, but only upon the failure of those methods which provide proof of actual notice—personal service or service by registered or certified mail, return receipt requested. *See* Tex. R. Civ. P. 106(a), (b); *State Farm Fire & Cas. Co. v. Costley*, 868 S.W.2d 298, 298–99 (Tex. 1993). Rule 106 allows the trial court to sign an order approving a substitute method of service, provided the movant files a motion supported by proper affidavit. *See* Tex. R. Civ. P. 106(b); *Costley*, 868 S.W.2d at 299. A trial court's order authorizing substituted service is the sole basis for such authority. *Vespa v. Nat'l Health Ins. Co.*, 98 S.W.3d 749, 752 (Tex. App.—Fort Worth 2003, no pet.).

Citing cases that stand for the proposition that notice cannot be waived in a temporary guardianship setting, Okumu contends that "personal service of a

4

putative or an alleged incapacitated person in a guardianship proceeding is mandatory."[1]  *See e.g., Ortiz v. Gutierrez*, 792 S.W.2d 118, 119 (Tex. App.—San Antonio 1989, writ dism'd) (holding that the personal service requirement under the former guardianship statute was jurisdictional and, therefore, the trial court properly dismissed a guardianship proceeding when the proposed ward had not been personally served).  But Okumu is simply mistaken in his proposition that substituted service under Rule 106 is not an accepted method of personal service in a temporary guardianship setting.

In this case the record demonstrates that after multiple attempts to serve Bays by the certified process server under the methods that provide proof of actual service, the process server resorted to court order; and in compliance with Rule 106 and that order, he served Bays by attaching the notice to her door.  *See* Tex. R. Civ. P. 106(b).  The record contains an affidavit by the process server, a motion for substituted service, an order by the trial court, and a return by the process server—all before the hearing on temporary guardianship.  We overrule this portion of Okumu's first issue.

In part of his first issue, Okumu also argues that because Bays was in the hospital when the temporary guardianship hearing was held, she "could not [be]

---

[1]In his original brief, Okumu argued that service was defective under Rule 106.  In his reply brief, Okumu changed the focus of his issue, contending that substituted service is a waiver of personal service and that substituted service is inappropriate in a guardianship setting.  The record demonstrates that the process server attempted multiple times to personally serve Bays, that Bays refused to be served, and that the process server obtained a Rule 106 order and complied with it.

and was not present at [the guardianship] hearing." Thus, according to Okumu, the trial court lacked jurisdiction and its order was void. Although the probate code does state that a proposed ward has the right to be present at the hearing, we find no infirmity in the trial court allowing Bays's attorney ad litem to represent her interests while Bays remained in the hospital. *See* Tex. Prob. Code Ann. § 685(a) (West 2003); *In re Guardianship of B.A.G.*, 794 S.W.2d 510, 513 (Tex. App.—Corpus Christi 1990, no writ) (reasoning that personal appearance at a hearing appointing a guardian can be made by "representation by counsel"). We overrule this part of Okumu's first issue.

In the remainder of his first issue, Okumu seems to contend that the trial court is required to demonstrate that a process server's return be on file for ten days prior to the temporary guardianship hearing. *See* Tex. R. Civ. P. 107. Wells Fargo argues that Okumu is trying to add statutory requirements to the probate code that do not exist. We conclude that probate code section 875 does not have a ten-day-notice requirement prior to a hearing being held. *See* Tex. Prob. Code Ann. § 875. Indeed, in a temporary guardianship procedure, the probate code requires a hearing to be held "not later than the 10th day after the date of the filing of the application for temporary guardianship." Tex. Prob. Code Ann. § 875(f)(1). It would simply be impossible to allow a return to be on file for ten days prior to the temporary guardianship hearing and to hold the hearing within the statutorily required ten-day period. We overrule the remainder of Okumu's first issue.

6

## B.    Due Process

In part of his second issue, Okumu contends that he was deprived of due process of law when the trial court ordered that he turn over funds that had previously been in Bays's bank accounts.  We conclude that Okumu was not deprived of due process.

Due process of law requires that an individual receive notice and hearing before being deprived of a property right.  *See Grannis v. Ordean*, 234 U.S. 385, 394, 34 S. Ct. 779, 783 (1914) ("fundamental requisite of due process of law is the opportunity to be heard").  But due process does not require that a complainant who has been granted an opportunity to be heard and has had his day in court should, after a judgment has been rendered against him, have further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment against him.  *See Ex parte Johnson*, 654 S.W.2d 415, 418 (Tex. 1983) (stating that notice and hearing prior to issuance of a turnover order is not required).  In the absence of a statutory requirement, it is not essential that a complainant be given notice before the issuance of an execution against his tangible property; after the rendition of the judgment, he must take notice of what will follow, no further notice being necessary to advance justice.  *Endicott Johnson Corp. v. Encyclopedia Press, Inc.*, 266 U.S. 285, 288, 45 S. Ct. 61, 62–63 (1924).

In this case, Okumu complains that he was deprived of due process of law because he was not given notice of the temporary guardianship hearing.  Okuma

does not point this court to any statutory requirement entitling him to notice prior to the hearing which he participated in. And the record demonstrates that Okumu participated extensively in the temporary guardianship proceedings. He filed multiple motions prior to the temporary guardianship hearing contesting both the guardianship and his deposition in relation to the guardianship. The application for guardianship clearly indicated that Bays's attorney would seek the return of funds that had been removed by Okumu from Bays's bank accounts. Okumu in fact attended the temporary guardianship hearing with counsel, and his counsel questioned multiple witnesses at the hearing. After the trial court issued its order which Okumu now complains of, he then filed multiple post-hearing motions contesting the guardianship. In short, Okumu has been granted his opportunity to be heard and had his day in court. *See Johnson*, 654 S.W.2d at 418. We overrule this portion of Okumu's second issue.

## C. The Propriety of the Trial Court's Order that Okumu Deposit Funds into the Court's Registry

In part of his third issue, Okumu contends that the trial court's order requiring him to deposit funds withdrawn by him or by Bays into the court's registry is "void because it was not supported by sufficient pleading or sufficient evidence and was vague and ambiguous."

The trial court's order appointing the temporary guardians ordered that Okumu "shall deliver all funds withdrawn by him or payable to him, or cash withdrawals by [Bays] from any sole or joint accounts, certificates of deposit of

8

[Bays] from October 27, 2008 to the present, to the Registry of this Court." The order also stated that the monies deposited into the court's registry were to include, but not be limited to: $19,000.00 withdrawn from First Financial Bank, $120,047.90 withdrawn from JPMorgan Chase Bank, $99,465.84 withdrawn from Bank of America, and $64,932.08 withdrawn from Woodforest National Bank.

Although it is difficult to decipher exactly what Okumu is complaining of in this issue, we conclude that the court requiring Okumu to deposit these funds into the court registry does not implicate any of the theories seemingly argued by him. In reaching this conclusion, we recognize that a trial court does have some inherent authority to order an individual to deposit funds into the court's registry. *See Castilleja v. Camero*, 414 S.W.2d 431, 433 (Tex. 1967) (holding that when disputed funds are in danger of being lost or depleted, the court can order payment of disputed funds into its registry until ownership is determined); *N. Cypress Med. Ctr. Operating Co. v. St. Laurent*, 296 S.W.3d 171, 178 (Tex. App.—Houston [14th Dist.] 2009, no writ) (same). This is especially true when, as in this case, a complainant can show a dispute about funds and show that the funds are in danger of being depleted. *See Castilleja*, 414 S.W.2d at 433–34.

In this case, the guardian ad litem gave detailed testimony regarding almost $300,000 that had been withdrawn from various bank accounts held in Bays's name or in joint accounts held in both Bays's and Okumu's names. The guardian ad litem testified extensively about her investigation of Bays's assets and said that she believed Okumu had wrongfully removed funds from accounts

9

owned by Bays. In addition, the guardian ad litem testified that Bays had signed deeds and quitclaim deeds of her property to Okumu. All of this was done at a time when Bays was ninety-three years old and in poor physical and mental health. Indeed, the immediate danger of serious impairment to her and the imminent danger of loss to her property served as the bases for the original suggestion by the social worker that Bays was in need of a guardian. More specifically, the suggestion of guardianship stated that since the time Bays had been unable to care for her own physical health and manage her own financial affairs, she had been giving money to Okumu, had revoked her son's power of attorney appointment, and had granted that power to Okumu. The suggestion further provided that it was not clear why Bays had done such things and that Okumu had a questionable background and had been disbarred in Indiana. Furthermore, the application for temporary guardianship specifically requested the relief that Okumu be ordered to place these funds in the court's registry. We hold that the trial court did not err by ordering Okumu to place these funds in the court's registry and that its order is supported by the evidence and not void. *See Castilleja*, 414 S.W.2d at 433–34. We overrule this portion of Okumu's third issue.

**D.     Contempt Issues**

In the remaining parts of his second and third issues, and in his fourth issue, Okumu makes various arguments regarding the trial court having found him in contempt.  We conclude that we have no jurisdiction to address these issues.

Contempt proceedings are not appealable because they "are not concerned with disposing of all claims and parties before the court, as are judgments; instead, contempt proceedings involve a court's enforcement of its own orders, regardless of the status of the claims between the parties before it." *In re Office of Attorney Gen. of Tex.*, 215 S.W.3d 913, 915–16 (Tex. App.—Fort Worth 2007, orig. proceeding); *see also Norman v. Norman*, 692 S.W.2d 655, 655 (Tex. 1985) (holding that court of appeals had no jurisdiction over an appeal from an order finding a party not in contempt); *In re Naylor*, 120 S.W.3d 498, 500 (Tex. App.—Texarkana 2003, orig. proceeding) ("Decisions in contempt proceedings are not appealable.").  A ruling regarding a contempt proceeding can be challenged only by an original proceeding.  *In re B.A.C.*, 144 S.W.3d 8, 11 (Tex. App.—Waco 2004, no pet.).  Thus, because Okumu's remaining portions of his second and third issues and his entire fourth issue are an attempted appeal of the trial court's contempt proceedings, we have no jurisdiction to address them.  We therefore dismiss these issues.

11

## IV. Conclusion

Having overruled Okumu's first issue and portions of his second and third issues, and having dismissed his remaining issues for lack of jurisdiction, we affirm the trial court's order.

BILL MEIER
JUSTICE

PANEL:  WALKER, MCCOY, and MEIER, JJ.

DELIVERED:  June 23, 2011

12