

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

## No. 02-23-00194-CV
_____

In the Interest of A.B. and A.B., Children

On Appeal from the 360th District Court
Tarrant County, Texas
Trial Court No. 360-708983-21

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

In this restricted appeal from a suit affecting the parent–child relationship (SAPCR), Appellant T.B. (Father) contends that there are six errors apparent on the face of the record: two related to service of process and four related to the sufficiency of the evidence. The Office of the Attorney General (OAG) disputes the service-related issues but concedes that the evidence is insufficient to support the amounts the trial court ordered Father to pay as cash medical support and child support. We agree with OAG. We will reverse the support orders, remand for a retrial of those issues, and affirm the remainder of the SAPCR judgment.

## I. Background

OAG petitioned the trial court to determine the parentage of twin girls A.B. and A.B. (the Twins), to appoint conservators for them, and to order medical and child support. OAG's petition was filed in November 2021, and at that time, OAG requested service of process on Father at an address in Dallas.

Almost ten months later, in September 2022, OAG moved for substituted service under Texas Rule of Civil Procedure 106(b). The motion was accompanied by a sworn statement from OAG's process server describing his numerous attempts to personally serve Father between mid-July and mid-August 2022. The process server explained that he had been asked to serve Father at a Carrollton apartment address, that he had twice confirmed with the leasing office that Father resided at the relevant apartment, and that to his knowledge, "this [wa]s the most likely location for [Father]

2

to receive notice of suit." He detailed three attempts to personally serve Father at the Carrollton apartment, providing specific dates and times for each attempt and stating that he had left delivery notices on Father's apartment door on each occasion. The process server also noted that he had left voicemails at the phone numbers listed for Father and that Father had not responded to any of his phone calls.

Relying on this sworn statement, on September 20, 2022, the trial court granted OAG's motion and authorized substituted service of Father either by "leaving a true copy of the citation, with a copy of the petition attached, with anyone over 16 years of age at [Father's Carrollton apartment]" or by "attaching a true copy of the citation, with a copy of the petition attached, to a door at [Father's Carrollton apartment]." OAG served Father less than two weeks later by affixing the documents to the door of Father's Carrollton apartment, and the return of service was filed with the trial court. Father did not file an answer to OAG's petition.

Later that year, the trial court held a short, final hearing on OAG's petition. Again, Father did not appear. No documentary evidence was offered at the hearing, and only one witness—F.Y.L.F. (Mother)—testified. She stated that Father was the Twins' biological father and that she did not know where he lived. She explained that Father had previously worked as a petroleum engineer but that she did not know if Father was still employed, if he was still in the same industry, or how much money he made. When OAG floated the idea that Father received monthly income of $8,552.66, it sought Mother's confirmation of this figure, but to no avail:

3

Q. [OAG]  If the Office of the Attorney General is able to determine that he makes $8,552.66 per month, do you think that's incorrect or inappropriate?

A. [Mother]  I don't know.

[Indentation altered.]  No other evidence was admitted to show Father's income or resources.

The trial court granted OAG's petition and entered a default judgment awarding OAG's requested relief.  It confirmed that Father was the Twins' father, appointed Father as possessory conservator (with Mother as managing conservator), and established the terms for possession of and access to the Twins.  As for medical and child support, the trial court found that Father had gross monthly resources of $8,552.66 and net monthly resources of $6,233.45, and based on these findings, it awarded cash medical child support of $385 per month, ongoing child support of $1,558 per month, and retroactive child support of $64,884.

Almost six months later, Father filed this restricted appeal—his first appearance in the case.

## II.  Standard of Review

To prevail in a restricted appeal, the appellant must establish that (1) he filed a notice of the restricted appeal within six months after the judgment was signed; (2) he was a party to the underlying lawsuit; (3) he did not participate in the hearing that resulted in the judgment complained of and did not timely file any post-judgment motions; and (4) error is apparent on the face of the record.  *Ex parte E.H.*, 602

4

S.W.3d 486, 495–96 (Tex. 2020); *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004); *see* Tex. R. App. P. 30. Only the fourth requirement is at issue in this appeal: whether error is apparent on the face of the record.[1]

"The face of the record . . . consists of the papers on file with the trial court when judgment was rendered." *M.B. v. R.B.*, No. 02-19-00342-CV, 2021 WL 2252792, at *4 (Tex. App.—Fort Worth June 3, 2021, no pet.) (mem. op.) (quoting *Clamon v. DeLong*, 477 S.W.3d 823, 825 (Tex. App.—Fort Worth 2015, no pet.)).

### III. Discussion

In six issues, which we construe as three, Father contends that error is apparent on the face of the record because (1) OAG did not adequately serve him with the suit; (2) the trial court failed to appoint the parents as joint managing conservators even though there was no testimony showing family violence; and (3) there was no evidence to support the amounts Father was ordered to pay as cash medical support, ongoing child support, and retroactive child support.

### A.    Service: No Error on the Face of the Record

In his first and second issues, Father challenges OAG's service of process. Although the precise nature of Father's challenge is unclear,[2] he appears to argue that

---

[1]The first three requirements are jurisdictional, while the fourth goes to the merits of the appeal. *E.H.*, 602 S.W.3d at 496–97. The jurisdictional requirements are not only undisputed but easily confirmed by the record: Father filed his notice of restricted appeal just shy of six months after the judgment was signed, he was a party to the underlying lawsuit, and he did not participate in the trial court proceedings or file any post-judgments motions.

substituted service was improper because (1) the sworn statement supporting OAG's motion for substituted service was insufficient as in *Coronado v. Norman*, 111 S.W.3d 838 (Tex. App.—Eastland 2003, pet. denied); and (2) the manner of substituted service authorized by the trial court was not "reasonably effective to give the defendant notice of the suit." Tex. R. Civ. P. 106(b). Neither argument reveals error on the face of the record.

### 1. Law on Substituted Service

A plaintiff may resort to substituted service only upon failure of the traditional methods of service that provide proof of actual notice, such as personal service. *State Farm Fire & Cas. Co. v. Costley*, 868 S.W.2d 298, 298–99 (Tex. 1993); *In re Guardianship of Bays*, 355 S.W.3d 715, 718 (Tex. App.—Fort Worth 2011, no pet.). Substituted service requires authorization from the trial court, which may be granted only if the plaintiff "files a motion supported by proper affidavit [or sworn statement]" that complies with Texas Rule of Civil Procedure 106(b). *Guardianship of Bays*, 355 S.W.3d at 718–19; *see* Tex. R. Civ. P. 106(b); *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990).

---

[2]Father makes numerous service-related allegations at various points in his brief, claiming that OAG's service lacked due diligence, "offend[ed] the traditional understanding of due process of law," violated Texas Rule of Civil Procedure 79, violated Texas Rule of Civil Procedure 106(a)(1), and violated Texas Rule of Civil Procedure 106(b)(2). Several of these complaints are lodged summarily in a single sentence without explanation or analysis. Liberally construing Father's brief as a whole in an attempt to reach the merits of his appeal, *see* Tex. R. App. P. 38.9, we interpret the core of his challenge to be raising the two service-related arguments addressed herein.

The affidavit or sworn statement must list any location where the defendant can probably be found and must state specifically the facts showing that the traditional methods of service have been unsuccessfully attempted at that location. Tex. R. Civ. P. 106(b). A sworn statement that does not "stat[e] specifically the facts showing that service has been attempted" is insufficient to support substituted service, *see id.*, as is a sworn statement that is conclusory. *Wilson*, 800 S.W.2d at 836. But if the plaintiff's motion and supporting affidavit are sufficient, then the trial court may authorize service of process "in any other manner . . . that the statement or other evidence shows will be reasonably effective to give the defendant notice of the suit." Tex. R. Civ. P. 106(b)(2).

Whatever the service method, "strict compliance with the rules for service of citation [must] affirmatively appear on the record in order for a default judgment to withstand direct attack." *WWLC Inv., L.P. v. Miraki*, 624 S.W.3d 796, 799 (Tex. 2021); *Primate Const., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994); *Wilson*, 800 S.W.2d at 836. In this context, "[t]here are no presumptions in favor of valid issuance, service, and return of citation." *Primate Const.*, 884 S.W.2d at 152; *see WWLC Inv.*, 624 S.W.3d at 799.

### 2. Sufficiency of the Sworn Statement

Father first argues that the sworn statement from OAG's process server was insufficient to support authorization of substituted service under Texas Rule of Civil Procedure 106(b) because the process server did not specify the identities of the

7

persons in the leasing office who confirmed Father's address. Father claims that "the exact scenario [that] transpired" here also transpired in *Coronado v. Norman*, and there, the court of appeals held that the sworn statement was insufficient to authorize substituted service under Rule 106. *Coronado*, 111 S.W.3d at 841–42.

Even if *Coronado* were binding on us, though, it would undermine Father's argument rather than supporting it. In that case, our sister court held that substituted service should not have been authorized because the process server's affidavit failed to list any specific dates or times of attempted service and did not identify any other avenues he had pursued to contact the defendant. *Id.* at 842. While Father is correct that the process server in *Coronado* confirmed the defendant's address by speaking with unnamed individuals at the location,[3] our sister court did not take issue with this; in fact, it was not even mentioned in the court's analysis. *See id.* at 840–42. Instead, "the specific dates and times of attempted service" were the dispositive details missing from the process server's affidavit. *Id.* at 842.

And here, OAG's process server included these details in his sworn statement. The process server listed the exact dates, days of the week, and times of day that he

---

[3]Even on this point, OAG's process server's sworn statement provided more detail than the affidavit in *Coronado*. There, the process server averred that "[o]n each of the occasions [of attempted service], [he] was informed that the said Defendant resided at such address but that he was not there." *Coronado*, 111 S.W.3d at 840. Here, in contrast, the OAG's process server specified that he had confirmed Father's residency by speaking with a person representing "[t]he leasing office"—not a random passerby.

8

had visited Father's apartment and attempted personal service: a Wednesday morning at 10:40 a.m., a Monday evening at 7:46 p.m., and a Saturday afternoon at 1:08 p.m., spread out over the course of several weeks. The process server also referenced other avenues he had explored to contact Father; he swore that he had left delivery notices on the door of Father's residence each time he had attempted service, and he noted that he had called Father's known phone numbers and left voicemails. The sworn statement in this case is thus distinguishable from that in *Coronado*. *See id.*

And apart from Father's reliance on *Coronado*, he has not identified any flaws that render the process server's sworn statement insufficient to support substituted service under Rule 106. *See* Tex. R. Civ. P. 106(b). We overrule his challenge to the sworn statement.

### 3. Reasonably Effective Manner of Substituted Service

Father also alleges that OAG's manner of substituted service was "unreasonable" because "it is clear from the face of the record that [Father] had a history of changing addresses," but OAG allowed 49 days to pass between the leasing office's confirmation that Father lived at the Carrollton apartment and the execution of substituted service at that address. Father asserts that "[t]here is no supporting documentation . . . other than the affidavit of the process server to indicate that [the Carrollton apartment] is [his] address."

First, it is not at all "clear from the face of the record that [Father] had a history of changing addresses," and Father has not provided any record references to support

9

this assertion. While the Dallas address listed for Father in OAG's petition was different from the Carrollton apartment where he was confirmed (by the leasing office via the process server) to be living ten months later, moving from one apartment to another over the span of ten months does not equate to "a history of changing addresses" on a regular basis.

Second, as Father indirectly acknowledges, the process server's affidavit is, in fact, supporting evidence that Father was living at the Carrollton apartment. Again, the process server's statement was sworn to and confirmed that the "leasing office" verified in mid-July 2022 and again in mid-August 2022 that Father resided at the Carrollton apartment. While this is circumstantial, rather than direct, evidence of Father's address 49 days later, it is nonetheless probative evidence, and there is nothing on the face of the record to contradict it. *Cf. Palacios v. Patel*, No. 02-18-00119-CV, 2018 WL 2728441, at *7 (Tex. App.—Fort Worth June 7, 2018) (mem. op.) (noting that, "despite the popular television clichés about the worth of circumstantial evidence, it indeed has legal, probative value"), *supplemented on other grounds*, No. 02-18-00119-CV, 2018 WL 3385571 (Tex. App.—Fort Worth July 12, 2018, no pet.) (suppl. mem. op.).

Although we make no presumptions in favor of service, *see WWLC Inv.*, 624 S.W.3d at 799, we cannot make unsupported inferences against service either. Father's argument would have us overlook the circumstantial evidence of his residence and assume that he moved residences based on nothing more than the

10

passage of 49 days. There is nothing in the record to support such an inference,[4] nor has Father cited any case law holding that the passage of 49 days between the confirmation of a defendant's residence and the date of service gives rise to a presumption that the defendant has moved.

In short, Father has not pointed to anything on the face of the record that shows that the manner of substituted service—posting the petition and citation on the door of an apartment that the evidence indicated was Father's residence—was not "reasonably effective to give the defendant notice of the suit." Tex. R. Civ. P. 106(b)(2).

Because Father has failed to show error on the face of the record, we overrule his service-related complaints.

## B. Custody: Inadequately Briefed

In Father's third listed issue, he alleges that "the trial court erred in failing to name the parties as joint managing conservators absent testimony of family violence." But he has wholly failed to brief this issue. *See* Tex. R. App. P. 38.1, 38.9.

An appellant's brief is "meant to acquaint the court with the issues in a case and . . . present argument t[o] enable the court to decide the case." Tex. R. App. P.

---

[4]Father requested a supplemental clerk's record with "scans of the . . . Returned Envelope from USPS addressed to [Father] with the [Carrollton apartment address]." In anticipation of this supplement, Father claimed that it would provide "further evidence . . .that the service was insufficient." No such supplemental record was filed, though, and there is nothing in the record indicating that correspondence mailed to Father's Carrollton apartment was returned as undeliverable.

38.9. To that end, the appellant must provide "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i).

Father has failed to do that here. Apart from listing the absence of family-violence testimony as an issue presented on appeal, Father's only other mention of this issue is in his recitation of the factual background, where he refers to the lack of a family-violence finding. The portion of Father's brief dedicated to his legal argument does not mention the alleged necessity of "testimony of family violence" at all, much less does Father provide analysis of the issue or cite relevant legal authorities. Without an "argument for the contention[] made" to "acquaint the court with the issue[]," *see* Tex. R. App. P. 38.1(i), 38.9, we are left guessing as to the nature of Father's family-violence-related complaint.

"[A]ppellate courts have no duty—or even the right—to perform an independent review of the record and the applicable law to determine whether there was error; we cannot make the party's arguments for [hi]m, and then adjudicate the case based on the arguments we have made on [his] behalf." *Wellness & Aesthetics Inst., PA v. JB&B Cap., LLC*, No. 02-22-00330-CV, 2023 WL 4780511, at *2 (Tex. App.—Fort Worth July 27, 2023, pet. filed) (mem. op.) (quoting *Craaybeek v. Craaybeek*, No. 02-20-00080-CV, 2021 WL 1803652, at *5 (Tex. App.—Fort Worth May 6, 2021, pet. denied) (mem. op.)). Because Father has failed to brief his third issue, he has waived

12

it. *See* Tex. R. App. P. 38.1(i); *Wellness & Aesthetics Inst.*, 2023 WL 4780511, at *2 (holding appellant waived issues raised in "perfunctory list of 'arguments'").

## C. Cash Medical Support and Child Support: Insufficient Evidence

In his final three issues, Father challenges the sufficiency of the evidence to support the trial court's awards of cash medical support, ongoing child support, and retroactive child support. OAG concedes the insufficiency of the evidence, and after reviewing the record, we agree.[5]

### 1. Standard of Review

We review a trial court's judgment granting child support for an abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *B.K. v. T.K.*, No. 02-19-00472-CV, 2021 WL 2149621, at *2 (Tex. App.—Fort Worth May 27, 2021, no pet.) (mem. op.). A trial court abuses its discretion when it acts arbitrarily or without

---

[5]Mother has not filed a brief. And neither Father nor OAG has addressed the potential effect of Father's failure to answer on his insufficiency complaint.

Generally, in the context of a no-answer default judgment, courts deem the non-answering party to have admitted all facts properly pleaded in the petition. *In re J.G.*, No. 02-22-00238-CV, 2023 WL 2179463, at *7 (Tex. App.—Fort Worth Feb. 23, 2023, no pet.) (mem. op.). We have questioned whether, "when conservatorship of children is involved, the same rules may not apply," but we have not resolved this issue in the context of a SAPCR that does not involve a divorce. *See id.* (noting unresolved issue and summarizing case law). We need not resolve this issue today, though, because even if Father were deemed to have admitted to the facts alleged in OAG's petition, such petition did not allege the amount of Father's gross or net resources, nor did it request a specific amount of cash medical support, ongoing child support, or retroactive child support. Instead, OAG's petition asked the trial court to order "appropriate current and retroactive child, medical, and dental support for the children."

reference to guiding principles, or when its judgment is supported by legally or factually insufficient evidence. *B.K.*, 2021 WL 2149621, at *2.

### 2. Statutory Child Support Guidelines

When calculating the amount of cash medical support, ongoing child support, or retroactive child support presumed to be reasonable under Texas law, the obligor's gross and net resources are key variables. *See* Tex. Fam. Code Ann. §§ 154.062, .125, .131.

If neither parent has access to private health insurance and the children receive medical care through a government program—as Mother testified the Twins do here —the trial court must order cash medical support in "an amount[] not to exceed nine percent of the obligor's annual resources." *Id.* § 154.182(b)(3), (b-2).

The amount of cash medical support is then deducted from the obligor's gross resources (along with taxes and certain other expenses) to calculate the obligor's net resources. *See id.* § 154.062(d). And the amount of the obligor's net resources is used to determine his presumptively reasonable child support payments. *See id.* §§ 154.122, .125.

By statute, "child support is generally determined by calculating the child support obligor's monthly net resources and applying statutory guidelines to that amount." *Gonzalez v. Gonzalez*, 331 S.W.3d 864, 868 (Tex. App.—Dallas 2011, no pet.). The statutory guidelines provide, for example, that an obligor with two children will pay either 20% or 25% of his net resources, depending on whether those net

resources are above a certain threshold. Tex. Fam. Code Ann. § 154.125(b), (c); *see M.G. v. T.G.*, No. 02-21-00433-CV, 2023 WL 2178762, at *4 (Tex. App.—Fort Worth Feb. 23, 2023, no pet.) (mem. op.). These same statutory guidelines—and the variables on which they rely—guide the determination of retroactive child support as well. *See* Tex. Fam. Code Ann. § 154.131 (providing that "[t]he child support guidelines are intended to guide the court in determining the amount of retroactive child support" and directing court to consider "the net resources of the obligor during the relevant time period").

Absent evidence of the obligor's gross resources, the trial court "shall presume that the party has income equal to the federal minimum wage for a 40-hour week," *id.* § 154.068(a), which equates to approximately $15,080 per year or $1,256.67 per month.[6] 29 U.S.C.A. § 206(a)(1)(C); *M.G.*, 2023 WL 2178762, at *4 (calculating gross resources and explaining); *Cervenka*, 672 S.W.3d at 819–20 & n.1 (similar); *Gonzalez*, 331 S.W.3d at 868 & n.2 (similar).

### 3. No Evidence to Support Inflated Payment Amounts

Here, there was no evidence of Father's gross or net resources. In fact, there was no evidence that he was even employed. Mother's testimony was the only evidence offered at trial, and when she was asked whether Father was working and

---

[6]The federal minimum wage is $7.25 per hour, resulting in gross income of $290 per 40-hour work week, and $15,080 per 52-week year. *See* 29 U.S.C.A. § 206(a)(1)(C); *M.G.*, 2023 WL 2178762, at *4; *Cervenka v. Cervenka*, 672 S.W.3d 814, 820 n.1 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.).

15

whether OAG's suggested salary figures seemed accurate, Mother responded that she did not know.

Because there was no evidence of Father's gross resources, the trial court was required to presume that he received income equal to the federal minimum wage, i.e., $15,080 per year or $1,256.67 per month. 29 U.S.C.A. § 206(a)(1)(C); Tex. Fam. Code Ann. § 154.068(a). Rather than applying this statutory presumption, though, the trial court found that Father had gross resources of $102,631.90 per year or $8,552.66 per month. There is no evidence to support this finding.

More to the point, this error had the knock-on effect of inflating the amounts of cash medical support and child support that the trial court ordered Father to pay. Father's cash medical support payments were statutorily capped at 9% of his gross resources—$113.10 per month based on the federal minimum wage—but the trial court ordered Father to pay $385 per month. Similarly for ongoing child support, the statutory guidelines provided for presumptively reasonable payments of 20% to 25% of Father's net resources, but the trial court ordered Father to pay $1,558 per month, which was more than 100% of his statutorily presumed gross resources of $1,256.67 per month.[7] The same is true for retroactive child support. The trial court ordered Father to pay $64,884 to cover approximately four years of missed payments, but this

---

[7]Father's net resources would have been less than his gross resources, *see* Tex. Fam. Code Ann. § 154.062(d), but because this difference is not dispositive, and because there was little evidence of Father's expenses, we need not linger over this distinction.

sum exceeded the entirety of Father's statutorily presumed gross resources for all four years, which would have been $60,320 based on the federal minimum wage.

The face of the record thus demonstrates that there is no evidence to support the ordered sums of cash medical support, ongoing child support, and retroactive child support. *See Gonzalez*, 331 S.W.3d at 868 (holding error apparent on the face of the record when trial court ordered appellant to pay monthly child support of $750 without evidence of appellant's employment status or income). We sustain Father's sufficiency challenges, which he lists as his fourth, fifth, and sixth issues.

## IV. Conclusion

Because the evidence is insufficient to support the trial court's awards of cash medical support, ongoing child support, and retroactive child support, we reverse these portions of the judgment and remand the case for a retrial of these issues. *See* Tex. R. App. P. 43.2(d); *Gonzalez*, 331 S.W.3d at 869 (remanding after restricted appeal and explaining that, "[w]hen legally insufficient evidence supports a default judgment, the proper remedy is remand, not rendition"). In all other respects, the trial court's judgment is affirmed. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: January 11, 2024

17